235 F.2d 457
 John L. SHANNON, Libelant,
v.
UNITED STATES of America, Respondent-Petitioner-Appellant, and
M. P. Smith & Sons, Inc., Respondent-Impleaded-Appellee.
 No. 354.
 Docket 23999.
 United States Court of Appeals Second Circuit.
 Argued May 11, 1956.
 Decided July 31, 1956.
 
 The suit was originally commenced against the United States to recover damages for personal injuries sustained by libelant, Shannon, while working as a longshoreman aboard the S.S. Lyman Stewart, owned and operated by the United States. The United States impleaded M. P. Smith & Sons, Inc., the stevedore employer. Subsequently, the United States paid libelant Shannon $11,000 in full settlement of his claim, and in connection with the defense of that action, incurred expenses for attorneys' fees and disbursements in the sum of $1,189.14. Thereafter, the United States filed an amended and supplemental petition setting forth the settlement with Shannon.
 After a trial of the government's claim against Smith before the trial judge without a jury, he entered a judgment dismissing the impleading petition. Smith does not deny that the United States was liable to Shannon for the amount it paid him.
 The trial judge's opinion reported in 119 F.Supp. 706, 707, reads as follows:
 "This suit in the Admiralty was filed by John L. Shannon, a stevedore, to recover damages for injuries sustained on February 13, 1943, while employed aboard the SS. Lyman Stewart, owned by the United States. Under the 56th Admiralty rule, respondent impleaded Smith & Sons, Inc., libelant's employer, upon a claim of indemnity.
 "After suit, and on June 25, 1948, the United States paid libelant $11,000 in settlement of the claims asserted against it; it now seeks to recover from Smith and Sons, Inc., this amount, and an additional $1,189.14 as attorneys' fees and disbursements necessarily incurred in its defense of libelant's claim.
 "The SS. Lyman Stewart was operated by the War Shipping Administration as agent; the vessel was moored in navigable waters at the Bayonne Navy Yard. Smith and Sons was hired by the United States as stevedores to work aboard the vessel.
 "When the stevedore's men came aboard on February 9, 1943 they spotted the booms. At that time libelant was not aboard. By contract with Smith and Sons the necessary cables were to be supplied by the United States. The cables so supplied were lying loose upon the deck of the vessel; they were rusted and kinky. The stevedore neither notified the United States of their condition nor refused to use them. Some of the kinks in the portion used to spot the booms were pulled out by hand when put around the spool in the course of the spotting operation. Later and on February 13, 1943 it was found necessary to respot one of the booms. Libelant was one of the gang of longshoremen who respotted the boom. While he was engaged in removing the bull wire from the winch, it sprang up and struck the glasses he was wearing driving a sliver of glass into his eye and resulting in the loss of the eye. This injury was occasioned by the use of the kinked cable.
 "The United States claims indemnity urging that it was only passively negligent and that the ultimate loss should rest on Smith and Sons whose active wrong proximately caused libelant's injury. Rich v. United States, 2 Cir., 177 F.2d 688.
 "To sustain this claim it must show that the indemnitee was passively or secondarily negligent, and that active fault lies solely in the indemnitor. Valerio v. American President Lines, D.C., 112 F.Supp. 202; United States v. Rothschild International Stevedoring Co., 9 Cir., 183 F.2d 181, relied upon as authority to support the claim of the United States to indemnity was expressly rejected by this Circuit in Slattery v. Marra Bros., 2 Cir., 186 F.2d 134, upon the authority of American Mutual Liability Insurance Co. v. Matthews, 2 Cir., 182 F.2d 322. In that case the unseaworthy condition was attributable to a defective rope which was supplied by the stevedore. I fail to see any distinction between a faulty rope and a faulty cable. Here, by contract the United States bound itself to supply the cable in good condition; to imply a duty on the part of the stevedore toward the United States to inspect the equipment before using it for the very purpose for which it was supplied or to detect patent defects would be to imply a promise on the part of the stevedore to protect the shipowner from its own negligence. Such a promise will not be implied. Conceding that the stevedore was negligent in failing to report the condition of the cable this was not such supervening negligence as would serve to wipe out the shipowner's active negligence. As between active tortfeasors there is no right of indemnity attributable to the failure to provide a seaworthy vessel. Valerio v. American President Lines, supra."
 The contract between the government and Smith contained these provisions: "The contractor shall during the period commencing 1 July 1944 and ending 30 June 1945, load or discharge cargoes, and in connection therewith perform all the duties of a Stevedore on any vessel which the government may designate at the following places. * * * The contractor, at his own expense, shall rig and unrig all ship's gear used by him, including the rigging and unrigging of the heavy lift gear when the heavy lift booms are provided with topping lifts, guys and purchase. He shall also hoist, lower and secure hatch tents when used. The government shall provide all gear for light and heavy booms, including guys, topping lifts, cargo blocks, and gantlines for hatch tents. * * * The Government at its own expense shall furnish and maintain in good working order the following: Cargo blocks, booms, bulk cranes, heavy lift cranes, wire and rope falls. * * *"
 Paul W. Williams, U. S. Atty., New York City, Kirlin Campbell & Keating, James B. Magnor and Vernon S. Jones, New York City, of counsel, for appellant.
 John P. Smith, New York City, John Nielsen, New York City, of counsel for appellee, M. P. Smith & Sons, Inc.
 Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 The trial judge found that the cables supplied by the United States were "kinky" when supplied to Smith, the stevedoring employer. As the oral testimony supports this finding, it is not "clearly erroneous." However, the testimony perhaps justifies an inference of fact that, despite the kinks, the cable was "in good working order," i. e., that stevedores regard the presence of kinks as a normal condition of a cable and consider it a part of the stevedore's ordinary function to remove such kinks.[1]
 
 
 2
 But we do not rest our decision on that ground, since we think Smith liable over to the owner even if, because of the kinks, the cable was not in "good working order." For Smith had expressly agreed with the owner to "rig and unrig the ship's gear" which Smith used. That agreement, we think, included, as a promise implied in fact, the following: If Smith knew of a defect in any such gear, Smith would either remove the defect or notify the owner. This express undertaking constituted an agreement to indemnify the owner for any loss resulting from a breach by Smith. The express agreement distinguishes this case from American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322, 324-325. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232.
 
 
 3
 The government is therefore entitled to recover from Smith the amount it paid him, together with its reasonable attorneys' fees and reimbursements in preparing to defend against Shannon's claim.
 
 
 4
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 One of Smith's employees testified that he had had dealings with many kinked cables and they had hurt no one. Smith's supervisor on the job testified that the hatch foreman had not complained of the condition of the cable, although it was his duty to report unsafe condition; that a brand new cable will develop kinks; and that kinks in a cable can be rather simply removed