Ruth HOLLEY, Administratrix of the Estate of Edward J. Holley, deceased, Libellant,

v.

Steamship THE MANFRED STANS-FIELD, her engines, boilers, etc., in rem, and Reederei Blumenfeld, G.M.B.H., in personam, Respondents.

REEDEREI BLUMENFELD, G.M.B.H., Petitioner,

v.

Joseph C. JETT, Respondent-Impleaded.

Joseph C. JETT and Reederei Blumenfeld, G.M.B.H., Petitioners,

v.

ELIZABETH RIVER TERMINALS, INC., Respondent-Impleaded.

No. 7802.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 15, 1960.

Fine, Fine, Legum, Weinberg & Schwan, Norfolk, Va., for libellant.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for SS Manfred Stansfield and Reederei Blumenfeld.

Jett, Sykes & Coupland, Norfolk, Va., for Joseph C. Jett.

Williams, Cocke, Worrell & Kelly, Norfolk, Va., for Elizabeth River Terminals, Inc.

WALTER E. HOFFMAN, District Judge.

In anticipation of the preparation of a final decree following the Court's opin-

ion of July 11, 1960, in which the libellant was awarded $12,500 in an action for wrongful death under the Virginia statute, and, under the indemnity theory, the ultimate liability passed to Elizabeth River Terminals, Inc., a respondent-impleaded by the original respondent, and also impleaded by Joseph C. Jett, the latter being another party impleaded by the original respondent, certain questions have arisen and will be discussed briefly.

According to Virginia law in an action for wrongful death, the jury, or court hearing the case without a jury, may determine among a specified class of beneficiaries which of said parties, or all, shall participate in the recovery. The decedent left a widow and minor son. This Court, in awarding $12,500, directed that the widow should receive the entire recovery, less reasonable attorney's fees, to the exclusion of the child.

Following the accident which resulted in decedent's death on September 19, 1956, Holley was initially taken to the hospital where an effort was made to save his life. Medical and hospital expenses in the aggregate sum of $390.65 were paid by Glens Falls Insurance Company pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Subsequent to the death and burial, the insurance carrier paid $400 to the widow by way of partial reimbursement for funeral expenses, all in accordance with the aforesaid Act.

As of August 9, 1960, the compensation carrier had paid to the widow, voluntarily but in accordance with the Act, the total sum of $4,476.15 covering a period of 203 weeks at $22.05 per week in the form of a death benefit. 33 U.S.C.A. § 909. As of the same date, the carrier had paid, voluntarily but in accordance with the Act, to Ruth Holley as the mother and natural guardian of Edward J. Holley, Jr., the decedent's son, the total sum of $1,918.35 covering a period of 203 weeks at $9.45 per week in the form of a death benefit.

The compensation carrier now seeks to credit all of the aforesaid payments on the judgment to be entered. While no formal petition has been filed, counsel have agreed that the matter may be considered in the final decree to be entered. The Elizabeth River Terminals, Inc., likewise raises questions with respect to attorney's fees to be awarded proctors for libellant and, of even more importance, the matter of counsel fees and costs to be awarded to the shipowner, Reederei Blumenfeld, G. M. B. H., and the charterer, Joseph C. Jett, who were successful in convincing the Court that the ultimate liability must rest upon the stevedore, Elizabeth River Terminals, Inc.

The wrongful death statute, § 8–638 of the Code of Virginia, 1950, provides in part:

> "The amount recovered in any such action shall be paid to the personal representative and after the payment of costs and reasonable attorney's fees shall be distributed by such personal representative to the surviving wife, husband, child and grandchild of the decedent, or, if there be no such wife, husband, child or grandchild, then to the parents, brothers and sisters of the decedent, in such proportions as has been ascertained by the judgment of the court, *and shall be free from all debts and liabilities of the deceased;* but if there be no such wife, husband, child, grandchild, parent, brother or sister, the amount so received shall be assets in the hands of the personal representative to be disposed of according to law."

All parties concede that the compensation payments to the widow shall operate as a credit upon the judgment to be entered. They are at variance with respect to the remaining compensation payments made by the carrier. It has been previously noted that the insurance carrier made all compensation payments without the necessity of an award in any compensation order. The widow filed the appropriate election to proceed against a

third party. The deputy commissioner did not affirmatively make any election for the infant child, nor did he expressly authorize the parent of said child to make such election. 33 U.S.C.A. § 933 (a) (h) as stated prior to the amendment of August 18, 1959. The wrongful death action must be instituted by the personal representative of the deceased. Code of Virginia, 1950, § 8–634.

■■ Being of the opinion that the compensation carrier cannot successfully seek reimbursement for compensation death benefits paid to the minor son, we need not consider further these particular payments. The case of Doleman v. Levine, 295 U.S. 221, 55 S.Ct. 741, 79 L. Ed. 1402, clarifying the prior opinion in Aetna Life Insurance Co. v. Moses, 287 U.S. 530, 53 S.Ct. 231, 77 L.Ed. 477, apparently puts the question at rest. The provisions of the Longshoremen's and Harbor Workers' Compensation Act do not amend the wrongful death statute of Virginia to the extent that the share of a beneficiary under the death statute may be used to reimburse the employer or compensation carrier for death benefits paid to a beneficiary under the Longshoremen's and Harbor Workers' Compensation Act who is not a recipient beneficiary under the death statute. Even though the minor son had certain rights of possible participation under the death statute, it remained within the discretion of the jury, or the court hearing the case without a jury, to direct in what proportion the damages should be distributed to the surviving widow and/or child, and it is clear from the statute that beneficiaries within the designated class may receive the whole or any part of the recovery[1]. Code of Virginia, 1950, § 8–636. The provisions of the Longshoremen's and Harbor Workers' Compensation Act permitting reimbursement to the employer or compensation carrier are predicated upon the assumption that a compensation beneficiary would also be an actual recipient beneficiary under the wrongful death statute. This is in keeping with the purpose and spirit of the Longshoremen's and Harbor Workers' Compensation Act. In Marlin v. Cardillo, 68 App. D.C. 201, 95 F.2d 112, it is said that the purpose of the Act was to give the injured employee the compensation therein provided or the amount recovered from a third party, whichever was greater. And in Chapman v. Hoage, 296 U.S. 526, 528–531, 56 S.Ct. 333, 334–335, 80 L.Ed. 370, Mr. Justice Stone pointed out that the insurer is given a right of subrogation, not to enable him to avoid his undertaking to indemnify those protected under the federal act, but that the undertaking may not be enlarged beyond that of indemnity. To this effect is Voris v. Gulf-Tide Stevedores, 5 Cir., 211 F.2d 549, discussing the question of attorney's fees. For related cases, see United States Fidelity & Guaranty Co. v. Higdon, Miss., 109 So.2d 329, and Zirpola v. T. & E. Casselman, Inc., 237 N.Y. 367, 143 N.E. 222, 224. Varying statutes and some states have caused contrary conclusions to be reached under the theory that the third-party wrongdoer should bear the entire cost of compensation[2]. To so hold would, however, emasculate the provisions of the federal act under which the minor child is entitled to certain compensation death benefits.

■ We turn to the items of medical, hospital and funeral expenses. As the wrongful death action recovery is exclusively for the benefit of certain class beneficiaries, and free from all debts of the decedent, evidence of such items would not be admissible in such action. The question is, admittedly, not free from doubt, but the underlying theory of these third-party actions is to prohibit a double recovery. The provisions of the federal act, 33 U.S.C.A. § 933, are ambiguous and, under well settled principles of law, should be con-

---

1. That the widow may receive all, and the child none, see Patterson v. Anderson, 194 Va. 557, 74 S.E.2d 195.

2. See dissenting opinion in United States Fidelity & Guaranty Co. v. Higdon, supra.

strued most favorably to the employee or, in the event of death, to his dependents. The law clearly permits reimbursement to the employer or his compensation carrier for medical and hospital expenses where the injured employee institutes the action as, in such instance, a contrary ruling would permit the injured employee to make a double recovery. The matter is not, however, quite so simple where death follows and the wrongful death action is maintained exclusively for the benefit of certain statutory beneficiaries. We see no more reason for permitting the employer or its insurance carrier to be reimbursed for hospital and medical items, as well as burial expenses, than to permit reimbursement for compensation death benefits paid to the infant son. As the widow, in her capacity as personal representative, was precluded from recovering in the statutory wrongful death action, the items of medical, hospital and burial expenses, the judgment of $12,500 against the third party should not be affected by these payments made by the employer's compensation carrier pursuant to the Longshoremen's and Harbor Workers' Compensation Act. The result would be entirely different if the recovery under the wrongful death action had been for the benefit of the decedent's estate, or if evidence of such items of expenditure could have been received and considered in such action. There may possibly remain, unless otherwise barred by the statute or laches, a cause of action against the shipowner for the controverted expenditures under the common-law right of recovery[3], in which event any recovery would be reimbursed to the compensation carrier, but we do not reach this point. In short, we do not feel that 33 U.S.C.A. § 933 is sufficiently clear to entitle the employer or its compensation insurance carrier to be reimbursed for anything in excess of the amounts properly included under the wrongful death action. Doleman v. Levine, supra.

Although not considered in argument, we have not overlooked the Virginia lien statutes providing that liens may be asserted against the tort feasor for hospital, physician or nursing expenses up to limited amounts, wherever the personal injuries result in death and actions are thereafter filed or compromised[4]. No liens have been asserted by the hospital or physicians as their bills were paid by the compensation insurance carrier. Indeed, the lien is not granted to physicians, nurses and hospitals where these items are paid under the Workmen's Compensation Act. No statutory lien exists for funeral expenses. The existing lien statutes merely create a method of payment to hospitals, physicians and nurses which, in effect, make any recovery in a death action subject to the limitations set forth in the statute. The only effect of the statute is to protect pro tanto the rights of those who have rendered services to the injured person pending his demise. In other words, it in effect adds their particular condition to the extent specified in the statute, to those other beneficiaries mentioned in the statutes creating the cause of action and regulating the distribution of the recovery.

### Attorney's Fees

It is incumbent upon the Court to ascertain the reasonable attorney's fees to be allowed to proctors for libellant. The litigation has been prolonged and will probably require even further services. The case was initially decided adversely to libellant but, on appeal, was reversed on a point of law considered to be unique. Certiorari was refused by the Supreme Court. Following remand, the matter was again argued and briefed. With the recovery fixed at $12,500, and bearing in mind the extent and quality of the legal services, as well as the results obtained, the fair and reasonable compensation is fixed at one-half of the recovery, or $6,250; the allowance being predicated upon the assumption that cer-

---

**3.** See annotation, 3 A.L.R.2d 932–942.

**4.** Code of Virginia, 1950, § 32–138, § 32–141.

tain non-recoverable costs will be absorbed by proctors for libellant.

. Because of the indemnity feature hereinafter discussed, it is necessary to examine the fees of proctors for the shipowner and charterer. Representing the shipowner, the firm of Vandeventer, Black, Meredith & Martin submitted a bill for legal services to the underwriter in the sum of $8,500, plus $973.31 costs and expenses, including appellate costs. The bill is not divided between the defense of the action and appellate proceedings, but proctors estimate that $5,500 is the fair valuation for services rendered in the investigation, preparation for trial, and actual trial in the District Court, with $3,000 being allocated for appellate proceedings. Proctors for the charterer, Jett, submitted a total bill of $3,250, plus $44.74 costs and expenses, of which amount $2,544.74 was submitted and paid prior to the reversal of said action, and $750 was submitted following remand.

■ Counsel for Elizabeth River Terminals, Inc., have frankly stated that, while not requesting the opportunity to produce evidence with respect to the fees being excessive, they are nevertheless too high. They point to their own bill in the sum of $1,250 submitted following this Court's first opinion adverse to libellant. The extent of the work performed by proctors for the shipowner was undoubtedly far greater than that rendered by proctors for either the charterer, Jett, or the stevedore, Elizabeth River Terminals, Inc. Presumably the volume of work done by proctors for the charterer and stevedore would be comparable. The bill rendered to the charterer in the sum of $2,500 was double the amount of the bill submitted to the stevedore or its insurance carrier. These factors are entitled to consideration but are not persuasive in leading the Court to believe that any of the fee bills are excessive or otherwise unreasonable or unnecessary. Furthermore, in ascertaining the reasonableness of attorney's fees, it is proper to consider the work involved in the preparation and presentation of the case in the appellate court. Virginia Electric & Power Co. v. Mitchell, 159 Va. 855, 164 S.E. 800, 167 S.E. 424. Counsel agree that the ascertainment as to reasonableness of attorney's fees shall be determined at this time, irrespective of the outcome of the litigation, to the end that this issue will not again be presented, but, in fixing the reasonableness of fees and costs, the Court has only considered prior appellate proceedings.

■ The stevedore advances two main points with respect to its obligation under the indemnity theory to pay attorney's fees and costs incurred by the shipowner and charterer. Initially, it is stated that, under the law, the shipowner was permitted to bypass the charterer and should have proceeded by impleading petition directly against the stevedore despite the lack of privity. Under the principles stated in Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, this was the shipowner's right of election as the shipowner was a third-party beneficiary as to the contract between the charterer and stevedore. The action was instituted on January 2, 1957, and it was not until September 24, 1957, that the shipowner impleaded the charterer under Admiralty Rule 56, 28 U.S.C.A. On October 21, 1957, the charterer impleaded the stevedore, Elizabeth River Terminals, Inc. Seven days thereafter, the shipowner likewise impleaded the stevedore. The shipowner had the choice of proceeding solely against the charterer, solely against the stevedore, or against both. A party seeking indemnity against one or more parties should have the election of proceeding against all indemnitors. While the solvency of the indemnitors is not in issue in this case, the indemnitee's right of election could become of importance under certain circumstances.

When the charterer was impleaded, it became his responsibility to defend unless his defense was undertaken by some other indemnitor. There is no contention that any impleaded respondent volunteered to assume the defense of the action. The original respondent and im-

pleaded respondents cooperated in the defense of libellant's claim. They differ now that liability has been determined. Since the defense of the shipowner's claim against the charterer was an essential feature of the case, the responsibility for attorney's fees and costs must rest upon the party ultimately liable for the payment of the damage.

It is now fairly well settled that an indemnitee may recover attorney's fees and expenses from an indemnitor under either an express or implied contract of indemnity. Shannon v. United States, 2 Cir., 235 F.2d 457; A/S J. Ludwig Mowinckels R. v. Commercial Stevedoring Co., 2 Cir., 256 F.2d 227; B. & G. Electric Co. v. G. E. Bass & Co., 5 Cir., 252 F.2d 698; General Acc. F. & L. Assur. Corp. Ltd. v. Smith & Oby Co., 6 Cir., 272 F.2d 581; Frommeyer v. L. & R. Construction Co., 3 Cir., 261 F.2d 879; Chesapeake & Ohio Ry. Co. v. Bailey Production Corp., D.C.S.D.W.Va., 163 F.Supp. 666; Commonwealth Public Service Corporation v. Town of Bluefield, 167 Va. 82, 187 S.E. 521; Hiss v. Friedberg, 201 Va. 572, 112 S.E.2d 871.

The stevedore suggests that in the recent case of General Electric Company v. Mason & Dixon Lines, Inc., D.C., 186 F.Supp. 761, the Western District of Virginia declined to allow any portion of attorney's fees incurred in prosecuting the claim for indemnity, but limited the recovery of damages by way of legal services to the value of such services in the defense of plaintiff's action which inured to the benefit of the indemnitor. There are, perhaps, circumstances in which this principle should be applied. Such a division was made in Frommeyer v. L. & R. Construction Co., supra. In the Mason & Dixon case, which resulted in a judgment (including interest and costs) in the sum of $38,678.46, the evidence disclosed that counsel for Mason & Dixon had secured an offer from plaintiff's counsel to settle the case for $15,-000, but General Electric would not agree to contribute to the settlement, even though, at the time, the liability of

Mason & Dixon as an indemnitor was extremely dubious. Counsel for General Electric had received by way of compensation for legal services the sum of $17,-500, plus $590.54 expenses. In allowing a recovery against Mason & Dixon for counsel fees in the sum of $3,000 and expenses in the sum of $500, the Court applied equitable principles and appropriate discretion.

The situation here presented is essentially different. To apportion the fees and expenses in ascertaining what amount is chargeable to the defense of the action and what amount is properly allocable to the prosecution of the claim for indemnity is very difficult. In fact, until liability for the wrongful death was fixed, there was little or no dispute between the shipowner, charterer and stevedore. Had this Court's original decision dismissing the libel been affirmed on appeal, the charterer and stevedore would have benefited thereby. Prosecuting the indemnity actions required very little more than the defense of the libellant's claim. A proper allocation of this portion of each indemnitee's claim for attorney's fees and expenses would be $800. There appears to be no other reason to characterize this case as an exception to the general rule in indemnity cases that the right of recovery by the indemnitee against the indemnitor is not limited to the amount of the judgment against the indemnitee, but also includes interest on the judgment, attorney's fees, costs and expenses. 42 C.J.S. Indemnity § 24, p. 602–603. The reasonableness and necessity of such fees, costs and expenses are always subject to determination by the Court, but if these essentials are met—as they are in this case—the indemnitor must be held liable as an element of damages in defending the action, unless the peculiar circumstances of the case command the invocation of principles such as in the Mason & Dixon case.

The charterer, Jett, was the indemnitor of the shipowner, and must reimburse the shipowner for damages flowing therefrom, including the princi-

**812**

pal and interest on the judgment, together with the attorney's fees and expenses incurred by the shipowner, less the sum of $800. The stevedore, Elizabeth River Terminals, Inc., was the indemnitor of the charterer, Jett, and the damages for which the charterer remains liable to the shipowner are, together with the charterer's attorney's fees and expenses, less the sum of $800, properly recoverable by the charterer against the stevedore.

Present judgment order.