### UNITED STATES LINES COMPANY, Third-Party Plaintiff,

v.

### E. J. LAVINO & COMPANY, Third-Party Defendant.

### Civ. A. No. 11216.

United States District Court
E. D. Pennsylvania.

Jan. 31, 1961.

Supplemental Opinion May 26, 1961.

---

484

---

Mark D. Alspach, Philadelphia, Pa., for third-party plaintiff.

Michael A. Foley, Philadelphia, Pa., for third-party defendant.

VAN DUSEN, District Judge.

### I. History of the Case

As the result of a severance (Document No. 61) of the principal action by a longshoreman for injuries received while unloading third-party plaintiff's vessel, this third-party action filed November 24, 1954 (Documents Nos. 54 and 68) against the consignee of the ore cargo, as third-party defendant, was not presented to the jury during the trial in which they returned a verdict for the longshoreman on the issue of liability. Subsequently, the damages suffered by the longshoreman were stipulated to be $27,000. The jury returned a verdict in favor of the plaintiff (longshoreman) and against the defendant-third-party plaintiff on the issue of liability on Jan-

uary 13, 1955 (see docket entry on page 146 of Vol. 90, Clerk's Civil Docket) and subsequently the parties agreed on the amount of damages. On March 4, 1955, the principal action was dismissed as the result of a stipulation of counsel (Document No. 65).

After numerous unsuccessful attempts to adjust this third-party action, it was tried to the court (see Document No. 75) and is now before the court for decision. The defendant-third-party plaintiff will be called, from this point in the opinion, "plaintiff" and the third-party defendant will be called "defendant."

## II. Findings of Fact

Plaintiff's requests for findings of fact (Document No. 76) numbered 1, 4, 5 with words "embodied in the bill of lading" deleted, and 6–14 are adopted as Findings of Fact of the court.

Defendant's requests for findings of fact (Document No. 77) numbered 1–4, 5 with the words "and was" inserted in the first line on page 2 after the word "plaintiff," 6 and 8–13 are adopted as findings of fact of the court.[1]

These findings of fact are supplemented by the following discussion.

## III. Discussion

Lavino Shipping Company, on behalf of defendant, made all the arrangements for and carried out the discharge of this cargo in the same way that it had on numerous previous occasions when such ore cargo had been shipped under F. I. O. bills of lading from the Philippines to Philadelphia for defendant as consignee. Although the F. I. O. (free-in and out) bill of lading (Exhibit 3P–1) only requires a consignee (or the shipper) to bear the cost of the unloading (N. T. 18, 28–30 and 88), the practice followed between plaintiff and defendant on previous occasions that defendant would arrange for the unloading by the Lavino Shipping Company on its behalf became an implied term of each contract of F. I. O. shipment of ore from the Philippines to Philadelphia and was a term of the contract covering this shipment, only part of such agreement being integrated in the F. I. O. bill of lading marked 3P–1 (see N. T. 31–33, 35, 40–41, 44–45, 52 and § 235(e), Restatement of Contracts). The agreement that defendant would arrange for the discharge of the cargo became firm at the time the booking letter[2] was sent.

Paragraphs 9 and 11 of plaintiff's requests for findings of fact[3] describe

---

1. Paragraphs 7 and 14 of defendant's Requests for Findings of Fact are denied as stated. With reference to paragraph 14, this language in the Revel case, infra, 162 F.Supp. at page 287, is noted:

"The expert stevedore was in charge of operations and 'the master had no duty or right of supervision as to instrumentalities adopted and methods used'. * * * The expert's contractual obligation to perform its duties with reasonable safety related not only to the handling of the cargo, as in Ryan [Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133], but also to the use of equipment incidental thereto. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra [355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491]. The expansion of this doctrine apparently places a duty upon the expert, not merely to call dangers to the attention of the ship's officers, but also to stop all operations as soon as it should have realized that it was unsafe to proceed without the danger being corrected."

2. See Exhibit 3D–2 for sample booking letter.

3. These paragraphs contain this language:
"9. In discharging third party defendant's cargo from the S.S. Pioneer Tide, Lavino Shipping Company removed the runner regularly attached to one of the winches at the forward end of No. 3 hold, and substituted as a 'land fall' a wire runner belonging to Lavino Shipping Company (NT 91–94). This was done to expedite the discharge, in that the vessel's regular runner would not have been long enough, if used as a house fall, to reach all three of the adjacent railroad tracks which Lavino Shipping Company determined it would use in connection with the discharge."

"11. At the time he received his injuries, Rogers was pushing an ore bucket, which was attached to the runners being used at the forward end of No. 3 hold, away from the square of the hatch. While Rogers was so engaged, the winch driver, a Lavino Shipping Company em-

how the injuries to the longshoreman were caused by the use by the stevedoring company, employed by defendant to discharge the cargo (Exhibit 3P-2), of an inadequate and improper wire, which was not fit or proper for the use to which it was put. Wherever an agreement has been made with an owner or operator of a ship requiring a party to be responsible for the unloading, that party is obligated to see that it is done in a safe, workmanlike manner and to indemnify such owner or operator of the ship for failure to comply with that undertaking. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S.S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 78 S. Ct. 438, 2 L.Ed.2d 491; Crumady v. The J. H. Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413; Waterman S.S. Co. v. Dugan & McNamara, 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169. In the Waterman case, supra, the court said, 364 U.S. at pages 423-424, 81 S.Ct. at page 201:

"This warranty of workmanlike service extends to the handling of cargo, as in Ryan, as well as to the use of equipment incidental to cargo handling, as in Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563 [78 S.Ct. 438, 2 L.Ed.2d 491]. The warranty may be breached when the stevedore's negligence does no more than call into play the vessel's unseaworthiness. * * *

"* * * the stevedore's assumption of responsibility for the shipowner's damages resulting from unsafe and improper performance of the stevedoring services was unaffected by the fact that the shipowner was not the party who had hired the stevedore. * * *

"'* * * The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party beneficiaries. Restatement, Law of Contracts, § 133. Moreover, as we said in the Ryan case, "competency and safety of stowage are inescapable elements of the service undertaken." 350 U.S., at [page] 133 [76 S.Ct. at page 237]. They are part of the stevedore's "warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." Id., [350 U.S.] at [pages] 133-134 [76 S.Ct. at page 237]. See MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 [L.R.A.1916F, 696].

"'We conclude that since the negligence of the stevedores, which brought the unseaworthiness of the vessel into play, amounted to a breach of the warranty of workmanlike service, the vessel may recover over.' [Crumady v. The J. H. Fisser], 358 U.S. 428-429 [79 S.Ct. 448].

"This reasoning is applicable here. We can perceive no difference in principle, so far as the stevedore's duty to indemnify the shipowner is concerned, whether the stevedore is engaged by an operator to whom the owner has chartered the vessel or by the consignee of the cargo." (Emphasis supplied.)

Where the cargo owner has agreed to load or unload the cargo, he has been required to indemnify the ship owner for damages caused to such ship owner by failure to carry out that undertak-

ployee, was ordered to 'overhaul' on the house fall, meaning that he was to permit it to unwind from the winch drum. In the process it transpired that the runner furnished by Lavino Shipping Company was not long enough to accommodate the destination of the bucket. This resulted in a sudden rewind of Lavino Shipping Company's runner on the winch drum, which in turn caused the bucket to be drawn backwards, striking Rogers and causing the injuries for which he sued third party plaintiff (NT 102; 122; 126)."

ing with proper appliances, even though he has someone else do the work. See Revel v. American Export Lines, D.C. E.D.Va.1958, 162 F.Supp. 279, 286–287, affirmed, 4 Cir., 1959, 266 F.2d 82, 87. Cf. Thompson v. Winslow, D.C.Me.1904, 128 F. 73, 76–78, affirmed, 1 Cir., 1904, 134 F. 546;[4] Park Steamship Co. v. Cities Service Oil Co., 2 Cir., 1951, 188 F.2d 804; Shannon v. United States, 2 Cir., 1956, 235 F.2d 457. In the Revel case, supra, the court used this language, 162 F.Supp. at pages 286–287:

"* * * there would seem to be an implied contractual agreement between Export and the United States wherein the United States agreed to provide the stevedoring services to such extent as they would be performed 'with reasonable safety'. This is the import of Weyerhaeuser which disclaims the necessity of an express indemnity clause."[5]

■ The principal legal contention made by defendant in its brief is that the entry of an order dismissing the first third-party action, which was brought in 1951, against Lavino Shipping Company (Documents Nos. 10 and 11), the stevedoring company with whom defendant contracted to unload the ship, is a complete defense on principles of res judicata of the present third-party action. See second defense of answer (Document No. 68). This order of dismissal was entered on February 6, 1952 (Document No. 20), granting a motion to dismiss filed February 5, 1952 (Document No. 19) on the ground that the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. barred such an action since the plaintiff was an employee of Lavino Shipping Company. No appeal was taken from this order of February 6,

1952, and after a new trial had been granted in the principal action, plaintiff filed another third-party complaint against Lavino Shipping Company on August 20, 1954 (Document No. 41). After an answer had been filed to such third-party complaint in September 1954 (Document No. 44), counsel for United States Lines filed a praecipe in November 1954 requesting that this 1954 third-party complaint against Lavino Shipping Company be marked withdrawn and dismissed without prejudice (Document No. 50).

■ This contention of defendant must be rejected at this time for each of the following reasons:

A. Judge Kirkpatrick has rejected this contention by his denial of a motion to dismiss this third-party action on this ground (Document No. 54) on March 21, 1955 (Document No. 67). Any attempt to have Judge Kirkpatrick's action reconsidered by this court must be presented to him. See TCF Film Corporation v. Gourley, 3 Cir., 1957, 240 F.2d 711, 713; United States v. Wheeler, 3 Cir., 1958, 256 F.2d 745, 746–748, certiorari denied 1958, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103; Two Guys from Harrison-Allentown, Inc. v. McGinley, 3 Cir., 1959, 266 F.2d 427, 432.

B. Since the dismissal of the initial third-party complaint in February 1952 was not on the merits but on the basis of a legal principle not applicable in this third-party action, which is not against the injured worker's employer (cf., also, Ryan Stevedoring Co. v. Pan-Atlantic Corp., supra, decided after the order of February 1952 and after Judge Kirkpatrick's ruling of 3/21/55), this defense is not available to defendant. See §§ 49,

4. The opinion in this case at 1 Cir., 1904, 134 F. 546, 548, raises the question of whether defendant discharged its obligation to the ship owner by selecting a competent stevedoring company to perform the unloading work. No evidence of Lavino's general competence in the field was produced at the trial and defendant has not cited this case or raised the point in its brief, so the point will be considered

waived, as it was in the Winslow case, supra, 128 F. at page 548. This is a close question.

5. This holding on more analogous facts is more pertinent than the dictum in Matson Navigation Co. v. United States, D.C. N.D.Cal.1959, 173 F.Supp. 562, 564, which was decided before the Waterman case, supra.

68(2) and 70, Restatement of Judgments; cf. Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784, 793–796.

### IV. Conclusions of Law

The requests for conclusions of law of plaintiff (Document No. 79) are adopted as the conclusions of law of the court. See Cooper v. D/S A/S Progress, D.C.E. D.Pa.1960, 188 F.Supp. 578, 588.

The requests for conclusions of law of defendant (Document No. 78) are denied.

An appropriate order in favor of plaintiff and against defendant may be submitted by counsel.

### Supplemental Findings, Conclusions and Discussion

The court, in its opinion of January 31, 1961 (Document No. 80), has determined that plaintiff is entitled to be indemnified by defendant for the amount it paid one Famous Rogers, a longshoreman who sued plaintiff in this court and obtained a liability verdict against it.[1] It had been previously agreed by the court and counsel that the issues of reimbursement of plaintiff for attorney's fees and costs incident to the principal action would be tried to the court separately from the claim for indemnity for the amount actually paid to Mr. Rogers (see pp. 143–153 of Document No. 75). Hearings on these issues were held on March 2 and April 6, 1961, at which hearings the attorney who handled the case for U. S. Lines testified concerning the fee ($10,500) and the out-of-pocket expenditures ($1,958.52), which have been paid by plaintiff and are referable to the defense of the principal action.[2] The attorney for defendant stated that he did not question the amount of

the expenditures or of the attorney's fee, but that it would not be appropriate under his view for the court to order defendant to reimburse plaintiff for such amounts expended.

■■■ Under the general law of indemnity, reasonable counsel fees and costs incurred in resisting the liability indemnified against may be recovered, whether the indemnity is implied in law or arises under written contract. Frommeyer v. L. & R. Construction Co., 3 Cir., 1958, 261 F.2d 879, 881; 42 C.J.S. Indemnity, §§ 13(d) and 24. The counsel fees in this case were reasonable. Counsel for U. S. Lines conducted the defense of the principal action with no assistance from E. J. Lavino & Company.[3] Since the fee was for services only up to February 25, 1955, there is no possibility that any of the fee is referable to the present action for indemnification and that part of it should therefore be eliminated. Cf. Holley, Adm'x v. S.S. Manfred Stansfield, D.C.E.D.Va.1960, 186 F. Supp. 805, 1960 A.M.C. 2307, 2317.[4]

■ There is no reason why the usual indemnity rule regarding payment of attorney's fees should not be followed in this case. In situations where the shipowner, who has been held liable because of the negligence of the stevedoring company, sues such company, attorney's fees of the shipowner have been allowed. See A/S J. Ludwig Mowinckels R. v. Commercial Steve. Co., 2 Cir., 1958, 256 F.2d 227, 232; Shannon v. United States, 2 Cir., 1956, 235 F.2d 457, 459; Cooper v. D/S A/S Progress, D.C.E.D.Pa.1960, 188 F.Supp. 578, 588. Assuming the existence of the right of indemnity as deter-

---

1. After the liability verdict was returned, the amount of damages was agreed to by the parties and the principal action was dismissed by stipulation. In this opinion, third-party plaintiff is referred to as "plaintiff" and third party defendant as "defendant."

2. The attorney's fee for services from January 16, 1950, to February 25, 1955 (the date U. S. Lines paid Rogers) was $10,500. Out-of-pocket expenditures referable to the defense of the principal action were $1,958.52.

3. E. J. Lavino & Company was joined as a third-party defendant on November 24, 1954. It then moved for a separate trial of the action against it and this motion was granted before the second trial of the action (Document No. 61).

4. Defendant does not question the reasonableness or accuracy of the fees or expenses as testified to by counsel for U. S. Lines.

mined in Conclusion of Law 7 (Document No. 79), adopted on page 8 of the January 31, 1961, opinion (Document No. 80), the fact that this action is against the consignee of the cargo which hired the stevedoring company and is not one directly against the stevedoring company does not preclude plaintiff from being fully compensated for its loss. See Holley, Adm'x v. S.S. Manfred Stansfield, D.C.E.D.Va.1960, 186 F.Supp. 805, 1960 A.M.C. 2307, 2315–17.

Defendant's argument that the insurance contract between U. S. Lines and its insurer precludes U. S. Lines from collecting attorney's fees is rejected.[5] Even if Pennsylvania law governs this action,[6] the facts of this case do not warrant a holding that Rohm & Haas Co. v. Lessner, 1951, 168 Pa.Super. 242, 77 A.2d 675, precludes recovery of these attorney's fees. Pennsylvania law holds that the existence of insurance covering an item of damage does not affect the claim of the assured.[7] However, the Rohm case held that an assured could not bring an action of indemnity for attorney's fees and costs incurred by its insurer, which hired the attorneys and conducted the defense of the principal

action, pursuant to an obligation in the insurance contract. In this case, U. S. Lines hired its own attorneys and paid them itself.[8] U. S. Lines could not have collected under paragraph (13) of the Insurance Agreement unless it had actually incurred and paid the expenses. Cf. Rohm & Haas Co. v. Lessner, supra, 168 Pa.Super. at pages 243–245, 77 A.2d 675.[9] Since the above-mentioned expenses and attorney's fees are proper items of damage in this indemnity action[7] and the Rohm case is inapplicable, plaintiff is entitled to have its judgment include the above-mentioned $12,458.22.

Defendant's alternate contention is that if it is held liable for attorney's fees paid by U. S. Lines, it should not be liable for more than $7,500, the value of the services to June 1, 1954, the date when the dismissal of the action was reversed by the Supreme Court. The position taken by defendant is that U. S. Lines should have appealed the dismissal of the action against Lavino Shipping Co. and, since it did not, it should not collect attorney's fees for any services after the decision. The position is not well taken. Even if U. S. Lines was precluded from

---

5. A sample contract has been received in evidence as Exhibit 3D–3 (see paragraphs 1(c) and 13).

6. It would appear that construction of an express or implied contract of indemnity, such as is contemplated by Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, would be governed by Federal Maritime Law where there were no written terms expressing the extent of the right to indemnity. Even if the foregoing conclusion is incorrect, the contractual arrangement was made in Pennsylvania and the F. I. O. Bill of Lading was issued in accordance with an arrangement previously made in Pennsylvania and carried out such previously made understanding. Also, Pennsylvania law is the law of the forum and the unloading was to take place in Pennsylvania. Pennsylvania law is in accord with the Federal cases holding that attorney's fees are collectible in indemnity actions. Orth v. Consumers Gas Co., 1924, 280 Pa. 118, 121, 124 A. 296. Under the circumstances, therefore, it does not seem necessary to decide whether federal law or Pennsylvania law

governs. Cf. Barber S.S. Lines v. Quinn Bros., D.C.Mass.1952, 104 F.Supp. 78, 80.

7. "It would be a novel proposition to hold that an insurance contract could reach out to indemnify a stranger, in no way a party to the insurance, whose wrongful act caused the insurance compay to pay loss to the insured which would not have occurred but for the wrongful act." Grubnau v. Centennial Nat. Bank, 1924, 279 Pa. 501, 505, 124 A. 142, 143. See, also, Florence v. Delaware, L. & W. R. R. Co., 1917, 258 Pa. 456, 460, 102 A. 133; cf. Sinovich v. Erie Railroad Company, 3 Cir., 1956, 230 F.2d 658, 660.

8. U. S. Lines was later reimbursed by its insurer, pursuant to the terms of Exhibit 3D–3, for the $10,500 it had paid to its attorneys.

9. In John Wanamaker, New York, Inc. v. Otis Elevator Co., 1920, 228 N.Y. 192, 126 N.E. 718, 721, relied on by the Pennsylvania Supreme Court in the Rohm case, supra, 168 Pa.Super. at pages 245–246, 77 A.2d 675, the court indicated that a cause of action for indemnification for attorney's fees would exist if the assured had paid the fees itself.

suing Lavino Shipping Co. because of its failure to take an appeal, this fact has *nothing to do* with this action against the consignee (this defendant). Plaintiff has not done anything to preclude E. J. Lavino & Company from bringing a separate action in indemnity against Lavino Shipping Co. This contention is, therefore, rejected.

Plaintiff's brief has been placed in the Clerk's file (Document No. 81), with plaintiff's counsel's letter of April 21, 1961, attached to it.

### Order

And now, May 26, 1961, it is ordered that judgment be, and the same is hereby, entered in favor of United States Lines Company, third-party plaintiff, and against E. J. Lavino & Company, third-party defendant, in the total amount of (a) the sum of $27,000, being the amount heretofore paid by United States Lines Company to Famous Rogers, original plaintiff, together with interest at 4 per cent. per annum from February 25, 1955, (b) the sum of $12,458.22 (being $10,500 plus $1,958.22), and (c) costs in the within action as between United States Lines Company and E. J. Lavino & Company.