William C. BARNES, Plaintiff, Appellant,

v.

REDERI A/B FREDRIKA, Defendant and Third-Party Plaintiff, and ATLANTIC & GULF STEVEDORES, INC., Third-Party Defendant, Appellees.

No. 9939.

United States Court of Appeals Fourth Circuit.

Argued July 1, 1965.

Decided Sept. 9, 1965.

C. Arthur Rutter, Jr., Norfolk, Va. (Gerald Rubinger and Amato, Babalas, Breit, Cohen, Rutter & Friedman, Norfolk, Va., on brief), for appellant.

Charles R. Dalton, Jr., Norfolk, Va. (Peter W. Rowe and Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellee Rederi A/B Fredrika.

Before HAYNSWORTH, Chief Judge, and BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Unseaworthiness, the basis of his unsuccessful action for injuries suffered aboard the MS Dorotea, longshoreman Barnes contends, was erroneously submitted to the jury by the District Judge when he charged that:

"Under the Maritime Law there is absolute and continuing duty on the part of the defendant, as owners of the vessel, to provide, maintain, and warrant that ship's equipment and gear aboard the vessel are reasonably safe in the area where the plaintiff may reasonably be expected to go.

\* \* \* \* \* \*

"If you believe from the evidence that the *absence of hatch boards* on the number five hatch, or the lighting conditions in and around the immediate area of the number five hold, 'tween deck level, or lack of stanchions around number five hatch, or the clearance between the stacked cargo and hatch square number four hold, 'tween deck level, were in any way in whole or in part unsafe, *then*

*the ship was unseaworthy.* And if you believe that as a proximate result thereof the plaintiff became injured, *at a place where the plaintiff could reasonably be expected to go,* then the defendant is liable to the plaintiff.

\*       \*       \*       \*       \*       \*

"We will now turn to the defense, as asserted by the shipowner. The shipowner owes the longshoreman the duty to provide him with a reasonably safe place in which to discharge his work. But *such duty is confined to those parts of the ship to which longshoremen may reasonably be expected to go.*

"To determine whether the shipowner should have reasonably anticipated Barnes would go into number five 'tween deck, you may consider proximity or lack of proximity to the work area, and Barnes' reasons for being there. And if the shipowner could not reasonably have anticipated Barnes would go to the point where he was injured, then warranty of seaworthiness did not extend to Barnes in that area, and you must find for the defendant." (Accent added.)

Barnes' exceptions run to the portions we have emphasized. His claim of negligence was voluntarily relinquished.

Barnes' argument is that the warranty of seaworthiness was not limited in area but extended to and protected him throughout the entire vessel; that the absence of the hatch boards constituted unseaworthiness as a matter of law; and therefore he was entitled to a peremptory charge of the ship's unseaworthiness, the submission of the question to the jury being error. We think not, and affirm the judgment of the District Court upholding the verdict in favor of the shipowner, defendant-appellee Rederi A/B Fredrika.

Employed by a stevedore in the discharge of general cargo from the Dorotea, while docked in Hampton Roads, Virginia, William C. Barnes was working with others at No. 4 hold. Near the end of the day certain bales of wool were discovered to have been unloaded through mistake. Barnes' gang was ordered to reload them upon the 'tween deck, just forward of No. 4 hold.

The hatch of No. 5 hold, immediately aft of No. 4, had been closed at the weather deck. There was no bulkhead or other fixed separation of the two holds at the 'tween level. In lieu, cargo had been piled athwartships between them to a height of 4 or 5 feet, for about 6 feet in thickness. This wall of cargo extended, at each end, to within 2 or 3 feet of the ship's hull. Between the cargo-wall and the coaming around the squares of the holds, there was approximately 3 feet for passage.

Barnes had not worked in the No. 5 area that day, and the re-stowing required neither access to nor any use of it whatsoever. A few minutes before Barnes' ill-fortune, pier superintendent Riley had gone part way down the 'tween deck ladder, on the fore side of No. 5, while looking for a reportedly missing stowage of canned beef. He found it stacked in the No. 5 'tween deck side of the cargo-wall near the ladder. None of it had been disturbed. The hold was dark and unlighted. It was covered at the 'tween deck with hatch boards, several of which had been set aside at the ladder and an opening into the lower hold thus created. Barnes was then engaged forward of No. 4 on the 'tween deck.

After the search Riley left the area. Very shortly, upon hearing the report of a fall in No. 5, he went to the weather deck where rescuers had opened No. 5 hatch. He could see Barnes lying at the foot of the ladder in the lower part of the hold. Cartons of the canned meat on the 'tween deck had been broken open, with several cans spread about on the deck. The ladder and the point of the missing boards in No. 5 were approximately 40 feet from where Barnes and his companions had been working.

██    No mistake is perceived in the Court's submission of the issue of unseaworthiness. Confining the duty of maintaining a seaworthy vessel to the reason-

able scope of the longshoreman's activity is logical and correct in principle. Fully acknowledged as an obligee of the ship's duty, nevertheless the longshoreman's due should not exceed the need for his protection as measured by his function on the vessel. He is not subject to momentary orders, as is a crewman, to any part of the vessel whatsoever, and his presence at a location unconnected with his task is not to be anticipated.

The legal soundness of this proposition was explicitly recognized in Calderola v. Cunard S.S. Co., 279 F.2d 475, 477 (2 Cir. 1960), cert. den. 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104 where this was said:

> " * * * [A] shipowner's duty to provide stevedores with a reasonably safe place to work is 'confined to those parts of the ship to which the [stevedore] * * * may reasonably be expected to go. * * * ' "

This language was borrowed from Lauricella v. United States, 185 F.2d 327 (2 Cir. 1950), which admittedly was a negligence case, but the Second Circuit's adoption of this statement in an unseaworthiness case gives it pertinency here.

Therefore, the pivotal questions presently were, first, whether the absence of the hatch boards created an unseaworthy condition, next whether it caused his fall and, thirdly, within what space longshoreman Barnes was warranted seaworthiness. In the disputed circumstances, obviously these were factual issues. Mahnich v. Southern S.S. Co., 321 U.S. 96, 98, 64 S.Ct. 455, 88 L.Ed. 561 (1944); cf. Scott v. Isbrandtsen Co., 327 F.2d 113, 127 (4 Cir. 1964). The jury was left entirely free to decide them, circumscribed only by the evidence it accredited. The verdict went against Barnes on all questions, and certainly the findings were not without support.

The District Judge, overcautiously we think, told the jury it could not consider whether Barnes had been stealing beef. Evidence on this point was admissible and relevant to establish, if only by inference, that Barnes had not gone around the cargo-bulkhead in his work but, instead, piratically. As the evidence was excluded and the error favored Barnes, the ruling does not enter into our decision.

The judgment of the District Court will be

Affirmed.