Ottis BAILEY, Libelant,

v.

UNITED STATES of America,
Respondent and Impleading
Petitioner,

v.

HORNE BROTHERS, INCORPORATED,
Impleaded Respondent.

No. 815.

United States District Court
E. D. Virginia,
Newport News Division.

Nov. 1, 1966.

Ellenson & Fox, Newport News, Va., Goldstein & Sterenfeld, New York City, for libelant.

Anthony W. Gross and Harvey M. Katz, Admiralty & Shipping Section, Dept. of Justice, for respondent and impleading petitioner.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for impleaded respondent.

WALTER E. HOFFMAN, Chief Judge.

## MEMORANDUM

The controversy in this case remains between the United States of America, as the owner of the USS TALBOT COUNTY, and Horne Brothers, Incorporated, the expert ship repair contractor, in the indemnity claim of the Government for attorney's fees and expenses allegedly incurred by the Government in the defense of this action instituted by Bailey, an employee of Horne Brothers, under the Public Vessels Act, 46 U.S.C. § 781.

Some history of the prior proceedings is necessary to place in proper focus the contentions of the parties. The libel was filed on May 18, 1965. The United States answered on May 28, 1965, in a pleading signed by the resident United States Attorney; the answer likewise containing the typewritten name "Harvey M. Katz, Attorney, Admiralty & Shipping Section, Department of Justice, Washington, D. C." On the same date the United States filed its impleading petition against Horne Brothers. On June 11, 1965, Horne Brothers, through its proc-

tor, filed a motion to dismiss the impleading petition on technical grounds. The case was called for an initial pretrial conference on July 8 and was attended by proctor for libelant and by Harvey M. Katz, the attorney for the Admiralty & Shipping Section, who came from Washington to Newport News, Virginia, for this purpose.[1] Proctor for Horne Brothers did not attend but all dates were confirmed by telephone. On July 9, 1965, the Court entered its order on the initial pretrial conference scheduling dates as follows:

August 9, 1965—completion of libelant's discovery.

September 1, 1965—completion of discovery for United States.

September 1, 1965—completion of discovery for Horne Brothers.

September 1, 1965—completion of de bene esse depositions.

August 27, 1965—attorney's conference in Newport News.

September 10, 1965—final pretrial conference with Court.

October 11, 1965—trial date.

On July 15, 1965, the Government propounded extensive interrogatories to the libelant. The libelant answered same on July 29.

In the interim period the Government had been urging Horne Brothers to assume the defense of the action. As hereinafter indicated, there was a serious question as to whether the Government was liable at all due to the fact that libelant was injured in a part of the vessel where he ordinarily would not have been in the course of his employment. On August 19, the Chief of the Admiralty & Shipping Section wrote a letter to proctor for Horne Brothers advising as follows:

"This is to inform you that the attorney's fees and expenses attributable to our taking the deposition of the libelant in the above-captioned case will be for the account of your client. We now estimate that our litigation costs are well in excess of $300.00."

Subsequently, on August 27, two other depositions were taken at the instance of the Government. The date of August 27 was the same date fixed for the conference of attorneys in advance of the final pretrial conference.

Around this same date (August 27) proctor for Horne Brothers and proctor for libelant commenced serious negotiations for settlement. Finally, an agreement was reached whereby the libelant was to receive $3,000.00 net, or stated otherwise, the total settlement was for $4,229.59, with $1,229.59 being repaid by libelant to the compensation insurance carrier for Horne Brothers.

When proctors met with the Court at the final pretrial conference on September 10, the Court was advised of the proposed settlement. Proctor for Horne Brothers had previously requested the attorney in the Admiralty & Shipping Section to waive the Government's claim for attorney's fees and expenses. This request was refused with the Government then contending that it would not dismiss the impleading petition without reimbursement to the extent of $750.00. Since the offer of settlement between libelant and Horne Brothers was unconditional, the Court confirmed same. In an effort to amicably adjust the trivial claim for attorney's fees and expenses allegedly due the Government, certain in chamber negotiations followed, with Horne Brothers finally indicating a willingness to pay as much as $500.00 and proctor for libelant agreeing to contribute $150.00. Mr. Katz had stated that the Government's claim for attorney's fees and expenses, as of the start of the conference, was $850.00. As the total

[1] An examination of the Local Rules relating to initial pretrial conferences discloses the purpose of same. The trial attorney is not required to attend this initial conference, the sole purpose of which is to arrange dates for the completion of discovery, fix a final date for the taking of de bene esse depositions, schedule dates for an attorneys' conference to be held in advance of the final pretrial conference, and set dates for the final pretrial conference and trial. The Admiralty & Shipping Section is thoroughly familiar with the Local Rules.

of $650.00 would have nearly met the demand of Mr. Gwatkin, Assistant Chief of the Admiralty & Shipping Section, and was within $200.00 of the total initially named by Mr. Katz, the latter made a telephone call to Washington in an effort to secure the approval of his superiors. The Court heard other matters and, several hours later, Mr. Katz returned to advise that no settlement could be effected. Faced with no other alternative the hearing on the claim for indemnity by way of attorney's fees and expenses was conducted on October 11 and 13, 1965. The Government contributed nothing to the settlement between Horne Brothers and the libelant.

The transcript, consisting of 343 pages, is a classic example of waste of taxpayer's money. The cost of bringing to Court the many witnesses used to establish the Government's claim for attorney's fees and expenses in this indemnity action is staggering—to say nothing of the value of the time of these witnesses, most of whom were Government employees.[2] The method of attempted proof of expense, with slight exceptions, is amazing. For example: (1) an F.B.I. agent's hourly salary, retirement and fringe benefits, overtime compensation, etc., are sought to be shown because the F.B.I., after the action was filed, rechecked several verbal statements of witnesses previously made to Naval investigators; (2) an attempt was made (without success) to prove the value of clerical help, dictaphone equipment, office space, furniture, etc., furnished to the F.B.I. agent by the Government; (3) the hourly salary of the District Legal Officer at Norfolk who spent 5 to 6 hours on the case is attempted to be shown as a cost item, together with his fringe benefits such as retirement, free medical service, office, furniture, secretarial and clerical help which

the Government provides; (4) the hourly salary and like fringe benefits of the young lady in the Industrial Manager's office of the Navy Department for making Xerox copies of the ship repair contract—a contract to which Horne Brothers was a party—which Xerox copies were not made (according to said witness) until 13 days after the primary case had been settled at the final pretrial conference; (5) the rental value of the offices occupied by the Admiralty & Shipping Section in the Department of Justice Building, Washington, D. C., including the square foot measurements of each room as well as the height of the ceilings; (6) the cost of each Xerox copy, the rental value of the machine, the salary of clerks operating the machine, etc.; (7) the budgetary cost of operating the Department of Justice, its libraries, etc.; (8) the number of attorneys in the Civil Division of the Department of Justice, their salaries, overhead cost of supervision, stenographers, etc.

The foregoing demonstrates the evils of bureaucracy. Aside from the fact that not a single employee on the payroll of the federal government was hired or employed because of this particular case, it is ridiculous to say that this is a proper method of showing the value of attorney's fees and expenses in indemnity actions. If the action involved a private shipowner, it would certainly not be permissible to show overhead costs of operation in establishing expenses to be charged against the stevedore or ship repair contractor. Ocean Accident & Guar. Corp. v. Southwestern Bell Tel. Co., 100 F.2d 441, 447, 122 A.L.R. 133 (8 Cir., 1939) cert. den. 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1056 (reversing D.C., 22 F.Supp. 686, 688). At best, actual expenses should be limited to the out-of-pocket expense in performing direct du-

---

2. It is indeed ironic to note the brief of the Government which complains that, if the contention of Horne Brothers is upheld, "the taxpayers will be forever saddled with the defense costs". Conservatively the Government has expended a minimum of $5000.00 to recover the $100.00 which was in dispute at the time of the final pretrial conference. This amount can never be recovered under the law. How do the taxpayers stand now?

ties in connection with litigation. Only the testimony of Mr. Winston, a Norfolk attorney experienced in the admiralty field, was necessary to consider as evidence of the value of attorney's fees. The record of actual expenses such as the cost of depositions, travel, etc., was readily available. While the Court sustained the objection to all of the irrelevant testimony, yet the attorneys for the Admiralty & Shipping Section insisted upon presenting same as an offer of proof to complete the record. It will be interesting to note the comments of other courts on this record. If the federal courts must listen to this type of proof of damages in indemnity actions, it would most assuredly discourage the settlement of these claims for attorney's fees and expenses and would clutter the court docket even more than what now exists.

Despite the ludicrous position advanced by the Government in the two day trial made necessary by its contentions, several interesting questions arise. They may be stated as follows:

(1) Assuming arguendo that the Government is legally entitled to recover attorney's fees and expenses in this indemnity action, should such expenses be reimbursed for travel out of Washington, D. C., where the office of the Admiralty & Shipping Section is located, or is it more reasonable to consider and compute same from the office of the nearest United States Attorney who is counsel of record?

(2) Where attorney's fees have not actually been incurred by the United States, is the Government entitled to recover same in an indemnity action?

(3) Under the facts of this case, did Horne Brothers breach its express or implied warranty of workmanlike service?

(4) Assuming arguendo that the Government is entitled to recover attorney's fees and expenses, what is the reasonable value of same?

## I.

We are met at the outset with a policy adopted by the Department of Justice to handle all maritime claims in its Admiralty & Shipping Section. This Section maintains its principal office in the Department of Justice Building in Washington, D. C., but also operates field offices in New York City and San Francisco. The wisdom of this operation is admittedly not for court determination, but the proper allocation of expense to be passed on to an indemnitor is the responsibility of the Court. For example, if a routine maritime case is filed in Miami, Florida, or Corpus Christi, Texas, the Government contends that the expenses of the attorney in the Admiralty & Shipping Section for travel from Washington to Miami or Washington to Corpus Christi should be charged against the indemnitor, even though the expense is incurred in connection with an initial pretrial conference or docket call and even though this routine work could have been performed by the United States Attorney or one of his assistants residing and maintaining an office in the district where the litigation is pending. As Mr. Katz now frankly concedes, it was unnecessary for him to travel 370 miles from Washington to Newport News and return to attend the initial pretrial conference on July 8, 1965. Under such circumstances, why should this expense be charged against the impleaded respondent?

The United States Attorney is *the* attorney of record for the Government in all of these cases. He signs all pleadings; he appears in the case and, if requested to do so, remains throughout all stages of same. The attorney for the Admiralty & Shipping Section is permitted to participate as a matter of courtesy. He is not qualified, as of right, to handle the matter alone.

Horne Brothers does not contest its liability for *reasonable* expenses incurred which are directly chargeable to this case. They do complain—and properly so—as to *unreasonable* travel expenses

and the fact that the cost of training young attorneys in the Admiralty & Shipping Section is being saddled upon them.[3]

██ In such a situation there appears to be only one reasonable solution in determining the propriety of incurred expenses. They should be limited to such *reasonably necessary* expenses as would have been incurred if the case had been handled exclusively by the resident United States Attorney or one of his assistants. Government attorneys, like private counsel, are inclined to enjoy an occasional "safari" to the sands of Virginia Beach, the night spots of Miami, or the French Quarter in New Orleans. The rule here established may prevent an abuse of this practice.

## II.

We turn to the question as to whether any attorney's fees should be charged against the impleaded respondent in favor of the United States by reason of this indemnity action. Without contradiction it is clear from this record that the Government paid no person, including any attorney, any fee for services rendered in connection with this litigation; it employed no private attorney or private investigator; no person is going to send a bill for any services rendered; the services rendered in this case by anyone, including the attorney, did not bring about any additional cost (except actual direct expenses) or require the retention of any additional personnel; nor did it require the increase in any salary; the budgetary costs of operating the Department of Justice (including the F.B.I.) and the Navy Department were not increased by reason of this litigation.

Concededly there is authority to support the Government's position that an award of attorney's fees may be made to the United States. The question first arose in Shannon v. United States, 235 F.2d 457 (2 Cir., 1956), where the Government obviously employed the services of private counsel. In Amato v. United States, 167 F.Supp. 929 (S.D.N.Y.1958), the district court made an allowance of attorney's fees to the Government even though the case was handled by salaried attorneys employed by the Government. *Amato* does not afford any discussion as to the court's reasoning and merely refers to A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring, Inc., 256 F.2d 227, 232 (2 Cir., 1958), which, in turn, cites *Shannon*, supra. Apparently in *Amato* the issue now raised was not squarely before the court. Clearly the A/S J. Ludwig Mowinckels Rederi case involved a private shipowner who was required to incur and pay an obligation for attorney's fees. The Government cites other authorities which it contends are applicable, but they do not consider the matter of attorney's fees as contrasted with indemnification for the actual award made to the injured longshoreman.[4] However, in Shenker v. United States, 322 F.2d 622, 629 (2 Cir., 1963) cert. den. American Stevedores v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606, the court approved an award of counsel fees to Government salaried employees, again without consideration of the basic issues here presented. This Court, without discussion of the problem now confronting it, followed Amato

---

3. Mr. Katz testified that this case was the first one assigned to him after entering the service of the Admiralty & Shipping Section. He graduated from law school in June, 1963. He was an attorney in the office of counsel for Military Sea Transportation Service, Department of Navy, until May, 1965, when he joined the Admiralty & Shipping Section. He concedes that he was not an "expert" in admiralty matters at the time.

4. Santomarco v. United States, 1959 A.M.C. 1808 (E.D.N.Y.1960), affirmed without discussing issue, 277 F.2d 255 (2 Cir., 1960), cert. den. American Stevedores, Inc., v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52. If, as stated in the Government's brief, an award was made for attorney's fees, it was not the subject of any reported opinion.

in Hill v. American President Lines, Ltd., 194 F.Supp. 885, 891 (E.D.Va.1961).

The question of allowance of counsel fees to the United States for services rendered by its salaried employees has become increasingly troublesome in other fields. For instance, in United States v. State Farm Mutual Automobile Ins. Co., 245 F.Supp. 58 (D.C.Or.1965), an allowance of attorney's fees was made in an action which originated under the Federal Tort Claims Act where a Government employee, covered under an automobile liability policy issued by State Farm, was held to be responsible for the accident. The primary question was whether the Government was an insured under the policy and the court held that it was. Analogizing the award of attorney's fees of salaried Government employees to those of house counsel of corporations as permitted in Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co., 281 F.2d 538 (3 Cir., 1960), the award was made.

As indicated above, the authorities are legion in holding that a private shipowner is entitled to reasonable attorney's fees and reasonable expenses actually incurred in the defense of the action.[5] This is true even where the claim is settled by the stevedore directly with the longshoreman before judgment, Rederi A/B Dalen v. Maher, 303 F.2d 565 (4 Cir., 1962), or where the fact finder determines that the injured party is not entitled to recover against the shipowner, American Export Lines v. Norfolk Shipbuilding & Dry. Corp., 336 F.2d 525 (4 Cir., 1964); Paliaga v. Luckenbach Steamship Co., 301 F.2d 403 (2 Cir., 1962). Of course, the shipowner cannot be reimbursed for services rendered in prosecuting his third-party action, Nicroli v. Den Norske Afrika-O g Australielinie Wilhelmensens Dampskibs-Aktieselskab, 332 F.2d 651 (2 Cir., 1964).

The indemnity rule in ship cases is stated by former Chief Judge Sobeloff in Rederi A/B Dalen v. Maher, supra, to be:

"If a shipowner can show that the stevedore's breach of warranty has occasioned it expense, reimbursement is due. Of course, the shipowner must prove that the stevedore, in fact, breached its warranty and caused injury for which the shipowner was potentially liable and that the expenses incurred in defense are reasonable."

If this were a matter of first impression the Court would unqualifiedly hold that the United States, where it has gone to no additional expense in using the services of its salaried attorney, would not be entitled to an allowance by way of attorney's fees. However, in addition to United States v. State Farm Mutual Automobile Ins. Co., supra, and Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co., supra, the matter was squarely decided in United States v. Myers, 363 F.2d 615 (5 Cir., 1966), where the court in allowing an agreed attorney's fee in the sum of $300.00 said:

"A different result is not required merely because the attorneys representing the United States are Government employees, and are paid a salary by the United States for performing their services."

Faced with this judicial precedent we are required to discount the argument of the impleaded respondent which, in effect, is that Congress never intended to transfer the burden of supporting the Department of Justice from the general public, through the medium of taxation, to the indemnitor in the particular case. There is language contained in United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), which lends substance to this argument. More recently [6] Congress has enacted P.L.

---

5. Holley v. S.S. Manfred Stansfield, 186 F.Supp. 805 (E.D.Va., 1960); De Gioia v. United States Lines Co., 304 F.2d 421 (2 Cir., 1962); Massa v. C.A. Venezuelan Navigacion, 332 F.2d 779 (2 Cir., 1964); Strachan Shipping Co. v. Koninklyke Nederlandsche S.M., N.V., 324 F.2d 746 (5 Cir., 1963); B. & G. Electric Co. v. G. E. Bass & Co., 252 F.2d 698 (5 Cir., 1958); General Acc. F. & L. Assur. Corp., Ltd. v. Smith & Oby Co., 272 F.2d 581, 77 A.L.R.2d 1134 (6 Cir., 1959).

6. P.L. 89–507, approved July 18, 1966.

89–507, amending 28 U.S.C. § 2412, providing in part:

"Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation."

■ The foregoing amendment is not, of course, in point, but it does suggest the rationale that statutory authority may be necessary to permit the allowance of attorney's fees to the United States in situations where the Government has not been put to additional expense by the retention of extra personnel.[7] This issue does not appear to have been advanced in the other cases wherein the Government has been the recipient of an allowance of attorney's fees for its salaried attorneys but, in light of the more recent decisions, this Court feels obliged to find that attorney's fees are allowable to the Government in indemnity actions even though such fees have not actually been incurred as an expense in the sense that it required any out-of-pocket payment.

## III.

The next question is whether, under the facts of this case, Horne Brothers breached its express or implied warranty of workmanlike service. Horne Brothers executed a "save harmless" agreement as to all suits, actions, claims, costs or demands, resulting from personal injury *arising or resulting in whole or in part from the fault, negligence, wrongful act or wrongful omission of Horne Brothers or their servants, agents or employees.*

We would have no hesitancy in finding that, *absent this express agreement,* there is insufficient evidence to sustain the contention that Horne Brothers breached its warranty of workmanlike service. The evidence abundantly establishes that the injured employee, Bailey, was injured in a part of the vessel where he had no business. Another employee of Horne Brothers had removed a cover from the forward tank opening and left it partially exposed for the purpose of permitting foul air to escape through the created vent. As the contract for the repairs and work done aboard the USS TALBOT COUNTY called for work in this tank and gaseous conditions were necessarily created, it was essential that the tank be vented. There was no negligence on the part of the employee who removed the tank cover for this purpose.

The injured employee, Bailey, a pipefitter, was working below decks in the after part of the vessel. He was instructed to go to the pier to obtain a fitting from the pipefitter's tool box located on the pier. To reach the gangway he was not required to go in the vicinity of the bow ramp machinery room where he sustained his injury when he fell into the opening of the ship's tank. Despite Bailey's testimony to the contrary, he was obviously on a mission of his own. Since the shipowner's duty to provide repairmen with a reasonably safe place to work is confined to those parts of the ship to which the workers may reasonably be expected to go, Calderola v. Cunard S.S. Co., 279 F.2d 475, 477 (2 Cir., 1960), cert. den. 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104, and since the warranty of seaworthiness as applied to such workmen or longshoremen extends only to those parts of the ship to which the injured worker may reasonably be expected to go, Barnes v. Rederi A/B Fredrika, 350 F.2d 865 (4 Cir., 1965), cert. den. 383 U.S. 910, 86 S.Ct. 895, 15 L.Ed.

---

7. Cf. Louisville & Nashville Railroad Company v. Rochelle, 252 F.2d 730, 736 (6 Cir., 1958).

2d 665, there was no implied breach of workmanlike service by reason of leaving the tank cover exposed, thereby resulting in the injury giving rise to this litigation.

 Examining the express "save harmless" agreement we find that Horne Brothers has assumed the legal liability for any claim against the United States occasioned by the *fault of any employee*. Thus it follows that, even though Bailey, the injured employee, may have been solely at fault, Horne Brothers agreed to cover any "claims, costs or demands" against the United States occasioned by the fault of any employee, including Bailey. Shenker v. United States, 322 F.2d 622 (2 Cir., 1963), cert. den. American Stevedores v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606.

### IV.

Finally we reach the ultimate question as to the reasonable value of the attorney's fees, and to what extent should reasonable expenses be allowed. As there has been no attempt to determine the expenses in accordance with the guideline established in I above, this matter will be deferred pending agreement of counsel or a further hearing. There is, however, sufficient evidence to fix the reasonable value of attorney's fees without regard to expenses.

Stripped of all non-essentials we think the most appropriate and only sensible method of fixing attorney's fees is to evaluate same according to what private attorneys, with like experience and qualifications, would deem to be reasonable. However, it must not be overlooked that, with respect to private attorneys, the reasonableness of their fee is dependent upon overhead, taxes, law licenses, etc. It is well established that, at best, forty cents out of every dollar is allocated to the items mentioned. The private attorney looks to sixty cents out of every dollar reaching his pocket. The testimony of John W. Winston, an experienced attorney in the admiralty field, is that he would have charged a fee of $1,500.00 for all services, including the

necessary work in prosecuting the impleading petition against Horne Brothers. It appears that some of the services performed were unnecessary but, assuming that all legal services were required, we feel that this total fee should be reduced to $1,200.00 when we consider the lack of experience, youth and earning capacity of Mr. Katz. Deducting 40% of said amount for the reason that the Department of Justice is not engaged in a profit-making venture, we find that the maximum attorney's fee for all services should be evaluated at $720.00. Apportioning 30% of this amount to the prosecution of the impleading petition, the Court allows the United States a recoverable attorney's fee in the sum of $504.00.

Counsel will attempt to agree upon the actual and necessary expenses in accordance with the formula heretofore suggested and, absent any agreement, the Court will consider further arguments on these various items. An appropriate decree may thereafter be presented.

