**UNITED STATES of America,**
**Plaintiff,**

v.

**431.60 ACRES OF LAND, MORE OR LESS, situate IN RICHMOND COUNTY, STATE OF GEORGIA, and Georgia Vitrified Brick and Clay Company, et al., Defendants.**

**Civ. A. No. 1487.**

United States District Court,
S. D. Georgia,
Augusta Division.

Feb. 1, 1973.

R. Jackson B. Smith, Jr., U. S. Atty., Southern District of Georgia, Augusta, Ga., Harry W. McKee, Attorney, Department of Justice, Washington, D. C., Edmund A. Booth, Jr., Asst. U. S. Atty., Southern District of Georgia, Augusta, Ga., for plaintiff.

Glenn B. Hester, Otis F. Askin, Fred K. Harvey, Jr., Sanders, Hester, Holley, Askin & Dye, Augusta, Ga., for defendants.

MEMORANDUM

ALAIMO, District Judge.

The amount of "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees actually incurred"[1] required to be reimbursed to the owner of land, the condemnation of which has been abandoned by the United States of America, is before the Court for decision.

In the fall of 1969, Georgia Vitrified Brick and Clay Company (condemnee above), learning that the Government was going to condemn its interest in certain lands, employed the law firm of Sanders, Hester, Holley, Ashmore & Boozer to protect its interests. Employment was evidenced by a contingent fee contract by which the attorneys would receive one-third of any amount "obtained over and above the present offers which said client has received, in connection with such condemnation proceeding. . . . ."

On October 3, 1969, the United States of America filed a complaint to acquire "all right, title and interest in all kaolin, clay, coal, oil, gas and all other minerals of whatsoever nature" in the subject lands. However, the United States did not utilize the statutory procedure set forth in 40 U.S.C. § 258a to acquire immediate title upon the institution of the suit.

At the time of service of the complaint on the condemnee, the latter was advised by the Marshal that it could no longer go on the property or mine it. Consequently, relying on this notice, condemnee did not exercise any dominion over the property for the ensuing two years.

In the early fall of 1971, condemnee realized that the condemnor had not, in fact, taken title to the property and that there was a chance to defeat its ultimate condemnation. The Company instructed

1. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(a).

its lawyers that the best result of the proceeding would be to defeat the condemnation so that the land could be retained by the Company.

As a result of this development, condemnee's lawyers obtained, orally, a modification of the contract of retainer which provided that in the event the property was condemned, the contingent fee would be enforced but that in the event the condemnation was defeated or the lands were not taken by the Government, that an attorneys' fee would be paid to the law firm on a *quantum meruit* basis.

Thereafter, the Government was not very energetic in the prosecution of the condemnation. Accordingly, in order to force the United States of America to "fish or cut bait" condemnee filed a motion for declaratory relief on November 24, 1971, which, in effect, requested the Court to declare the United States could not dismiss or abandon the condemnation proceedings without payment of just compensation. The Government responded on December 14, 1971, that when neither a declaration of taking is filed, nor possession taken of the property, the condemnation proceeding may be abandoned prior to payment and transfer of title. In this response, the United States admitted that upon the abandonment of a condemnation proceeding, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(a), requires that the United States reimburse such owner for "his reasonable costs" incurred in the condemnation proceeding.

On May 22, 1972, the condemnee filed a motion seeking reimbursement of fees and expenses incurred by it alleged to be $12,562.63, in expenses and $70,000 attorneys' fees.

The Government was then afforded an ample opportunity, by way of discovery, to determine the basis for the claim for reimbursement.

## THE FACTS

The Court conducted an evidentiary hearing on the motion for reimbursement on December 19, 1972.

The United States of America offered no evidence at this hearing except a copy of the *Manual of Fees and Charges* issued by the State Bar of Georgia in August, 1969.

From the unrebutted oral testimony offered by the condemnee, and a consideration of the affidavits and depositions of file, the following findings and conclusions are entered:

1. On October 3, 1969, the United States instituted condemnation proceedings to acquire the mineral rights in 431.60 acres of land owned by Georgia Vitrified Brick and Clay Company. Almost two and a half years later, on March 15, 1972, the United States dismissed its case, and abandoned the proceedings. On May 22, 1972, Georgia Vitrified Brick and Clay Company filed a motion requesting that it be reimbursed in the amount of $82,562.63 as its reasonable costs and expenses incurred because of the condemnation proceeding, pursuant to the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(a).

2. In the fall of 1969, condemnee employed the law firm of Sanders, Hester, Holley, Ashmore and Boozer to represent its interest in the condemnation proceedings on a contingent fee basis, solely.

3. In October of 1971, the attorneys' fees contract between condemnee and its attorneys was orally modified whereby the attorneys were to resist condemnation, and, if the condemnation were abandoned, the attorneys were to be compensated on a *quantum meruit* basis. Thereafter, the condemnee's attorneys continued to represent condemnee on the basis of the modified contract, and the latter actually incurred an obligation to pay the attorneys the reasonable value of their services.

4. The condemnee's attorneys expended approximately twelve hundred hours in these proceedings.

5. Pretrial discovery demonstrated that condemnee's attorneys had skilfully prepared and marshaled a formidable case for a substantial award. Their expert testimony indicated that the minerals on the land being condemned ranged in value from One and One-half Million to Twenty-four Million Dollars. This was a moving factor in inducing the United States of America to dismiss the condemnation proceedings.

6. In measuring the value of these services, the Court considers the professional standing of counsel for the condemnee, the magnitude and complexity of the litigation, the responsibility undertaken, the result obtained, the Court's knowledge of the work done by condemnee's attorneys (a copy of the docket sheet is appended), the customary charges of the Augusta Bar for similar services, as well as the time and labor involved. From the evidence and these considerations, the Court finds that the reasonable value of the condemnee's attorneys' services is Forty-five Thousand Dollars ($45,000), and Georgia Vitrified Brick and Clay Company has actually incurred an obligation to pay this amount to its attorneys.

7. With respect to the other expenses claimed by the condemnee to be $12,562.-63, the United States of America disputes only $519.95, leaving an uncontested balance of $12,042.68, actually incurred by condemnee.

The plaintiff offered no evidence other than a fee schedule. It argued that the Court should not believe the undisputed sworn testimony of the condemn-

ee's officers and stockholders and its attorneys. This argument was unpersuasive and the Court declines to follow it

## THE APPLICABLE LAW

■ Of course, the constitutional command that just compensation be paid in condemnation cases does not encompass expenses of litigation and attorneys' fees. Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904, 68 A.L.R. 434. Accord 30 C.J.S. 442, Eminent Domain § 386; 4 Nichols, Eminent Domain, Page 704.

■■ Here, however, there is a statute requiring the payment to the condemnee of any expenses and attorneys' fees incurred by him when the Government abandons a condemnation.[2] I am informed by counsel for the parties that there are no cases decided under this statute, and I have not found any. But the words are plain and unambiguous, permitting no unusual construction. In States where similar statutes are in force, it is held that in order for a condemnee to be reimbursed, he must have actually *incurred* the expense. In an abandoned condemnation, a contingent fee alone would give rise to no "incurred" obligation because the contingency did not occur. But where, as here, the parties provide for compensation of the attorneys in the event the condemnation is abandoned, the condemnee is entitled to be reimbursed for such reasonable attorneys' fees. *See* Franklin-McKinley School District v. Lester, 223 Cal.App.2d 347, 35 Cal.Rptr. 727 (1963); Chicago and South Trac. Co. v. Flaherty, 222 Ill. 67, 78 N.E. 29 (1906). Also see Annotation, Liability, upon abandonment of eminent domain proceedings, for loss or expenses in-

2. 42 U.S.C. § 4654(a) provides in part, as follows:

"The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if— * * *
(2) the proceeding is abandoned by the United States."

curred by property owners, or for interest on award or judgment, 92 A.L.R.2d 355.

Applying the law to the facts, the Court concludes as a matter of law that the condemnee is entitled to judgment in the sum of Fifty-seven Thousand Forty-two Dollars and Sixty-eight Cents ($57,042.68).

The foregoing constitutes the findings of fact and conclusions of law in this matter.

Let an appropriate judgment be entered.

## APPENDIX