**Elizabeth BRISBANE, Plaintiff,**

v.

**The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Arthur Tate, Ursula Barrett, Harold Milley, Defendants.**

No. 76 Civ. 1548.

United States District Court,
S.D. New York.

June 17, 1982.

Walker & Bailey, New York City, for plaintiff; Cora T. Walker, New York City, of counsel.

Patrick J. Falvey, Gen. Counsel for Port Authority of N.Y. and N.J., New York City, for defendants; James M. Begley, Herbert Quida, Jay Selcov, New York City, of counsel.

MEMORANDUM AND ORDER

OWEN, District Judge:

Plaintiff Elizabeth Brisbane brought this action under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e–2, against her employer, the Port Authority of New York and New Jersey (the "Authority"), and three of its employees seeking damages for alleged discrimination in the course of her employment because she was a black woman. After a six-day, non-jury trial over which I presided, I rendered findings of fact and conclusions of law from the bench, which I supplemented shortly thereafter with written findings and conclusions. I found: (1) that plaintiff had failed utterly to prove the discrimination she alleged in her complaint; (2) that she had been denied various promotions for which she had applied solely because of her lack of competence and her poor attitude; and (3) that the action was frivolous, was brought in bad faith, and was initiated only to harass and punish the Authority. Consequently, I dismissed the complaint and awarded defendants attorneys' fees in an amount to be determined after the submission of appropriate affidavits by the parties.

■ I note at the outset that while it is within the discretion of the Court to award attorneys' fees to prevailing defendants in Title VII actions, *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 261–2 & n. 35, 95 S.Ct. 1612, 1623–1624 & n. 35, 44 L.Ed.2d 141 (1975), such discretion should be exercised with caution and only in cases which are found to be frivolous, unreasonable, or vexatious. *Carrion v. Yeshiva University,* 535 F.2d 722 (2d Cir.1976). For the reasons outlined in my findings of fact and conclusions of law of March 3 and 5, 1981, and for the reasons below, I find this to be just such a case.

Plaintiff became a tolls supervisor for the Authority in 1965. Her duties included supervising toll plazas and training and counseling employees under her supervision. Between 1966 and 1977, at such times as the performance of her duties was found to be satisfactory, plaintiff received several salary increases. In 1974, 1975, and 1976, however, plaintiff's job performance was inadequate, and she was not given a salary increase. Instead, the Authority found it necessary to discipline her on three occa-

sions. The evidence made it clear that on numerous occasions plaintiff refused to follow her superiors' perfectly proper instructions, was extremely uncooperative, and discharged her responsibilities wholly inadequately.

Against this background plaintiff sought numerous promotions within the Authority. Although she failed to secure any, she was interviewed in connection with many of her applications, and she was given fair and adequate consideration. In almost every instance in which plaintiff was denied a promotion, the successful applicant clearly was more qualified than plaintiff, and in no instance did the successful applicant have a history of inadequate job performance or multiple disciplinary problems. Moreover, most of the promoted candidates were either female, or members of racial minorities, or both.

At the close of the evidence it was clear beyond any doubt that plaintiff had been denied the promotions she sought because of her poor work history, her disciplinary problems, her inadequate job performance, and her relatively lesser qualifications. It was equally clear that, contrary to the allegations in her complaint, her failure to advance was in no way connected to her race or gender. Indeed, the record is bereft of any evidence that the Authority or any of the individual defendants wrongfully discriminated against her in any way. To the contrary, the record establishes that throughout the relevant period the Authority maintained a voluntary and successful affirmative action program for the recruitment and advancement of minority employees.

In short, the complete record after a six-day trial bore out what plaintiff herself admitted on the witness stand: she had absolutely no objective evidence that the defendants she sued had discriminated against her on account of her race or gender. · Nonetheless, she filed discrimination charges with the Equal Employment Opportunity Commission, and, when those charges

were not sustained,* she filed her complaint in this Court. Five years of motion practice and discovery yielded a thick court file and culminated in six days of trial. I conclude that from the inception of this case, plaintiff knew or should have known that her case had no merit whatever. I am also compelled to conclude that this action was motivated by an angry desire to punish defendants for plaintiff's professional failures that were of her own making.

■ Title VII's prohibition of discrimination in employment on the basis of, *inter alia,* race and sex is " 'a policy that Congress considered of the highest priority.' " *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 418, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978) (citation omitted). To promote the vindication of this worthy policy, Congress empowered district courts to award attorneys' fees to plaintiffs who must go to court to establish their rights. 42 U.S.C. § 2000e–5(k). Because of concern that this enforcement mechanism could be abused, however, Congress elected to authorize the award of attorneys' fees to "prevailing *parties* " in Title VII actions, rather than merely to "prevailing *plaintiffs,*" thereby enabling prevailing defendants to recover the costs and fees incurred defending frivolous, meritless, and vexatious lawsuits, such as this one. *Christiansburg Garment Co. v. EEOC, supra.* To permit a plaintiff to prosecute such an action without fear of liability for the substantial cost to a wrongly-accused defendant of defending the action would make a one-sided mockery of the enforcement mechanism that Congress has enacted. I conclude, therefore, that defendants are entitled to a reasonable attorneys' fee as part of the costs of defending this clearly unreasonable action.

I turn, then, to a determination of the amount to be awarded. Defense counsel, "in-house" counsel for the Authority, calculated that 623 hours of attorneys' time alone was spent in the defense here. I credit this calculation, for with respect to each of plaintiff's numerous applications for promotion, the Port Authority personnel involved had to be interviewed, records had to be found and analyzed, and witnesses had to be obtained to testify. The disruption to the Authority must have been enormous. Defendants ask the Court to assign an hourly rate of $100 as the value of the attorneys' time spent and award a total fee of $62,333. While I do not find this to be an unreasonable estimate of the customary fee charged by competent and experienced independent counsel for similar services, I face the fact that plaintiff's affidavit reveals her resources to be limited. Nonetheless, she states that she is paying her own counsel $10,000 in monthly installments of $250. In light of all the above and in consideration of the length of the trial, the volume of discovery, and defense counsel's high level of competence, I award to defendants a total of $5,000 as an attorneys' fee, beyond any question reasonable, in no event to be paid in installments of less than $250 a month.

---

\* The Commission found that there was no probable cause to believe that the Authority had discriminated against plaintiff in violation of the Civil Rights Act of 1964.