### WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Plaintiff,

v.

### The UNITED STATES, Defendant.

### No. 96–119L.

United States Court of Federal Claims.

July 1, 2003.

Edward J. Maginnis, Washington, D.C., for plaintiff, with whom was Cheryl C. Burke and Carol B. O'Keefe.

Alan Brenner, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., for defendant, with whom was Assistant Attorney General Thomas L. Sansonetti.

## ORDER

ALLEGRA, Judge.

Before the court are the remnants of a hotly contested takings action, in which this court previously ruled that, under the Fifth Amendment, the Washington Metropolitan Transit Authority (WMATA or plaintiff) is entitled to just compensation for defendant's physical taking of a portion of the land that underlain a former trolley line. *See Wash. Metro. Transit Auth. v. United States,* 54 Fed.Cl. 20 (2002). That compensation amounted to $862,681.60. *Id.* A subsequent cost petition filed by WMATA has raised a thorny issue regarding its entitlement to attorney's fees on account of services provided by its in-house counsel.

Plaintiff is entitled to be reimbursed certain costs and expenses under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 84 Stat. 1894, 1906 (1971). Section 304(c) of the URA (42 U.S.C. § 4654(c)) indicates that a court rendering a judgment awarding compensation for the taking of property by a Federal agency shall determine and award "such sum as will in the opinion of the court ... reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." *Id.* Pursuant to this provision, plaintiff requests $172,603.75 for attorney's fees, of which $65,388.75 is for work performed by its in-house counsel in trying this matter. Employing the lodestar method, plaintiff seeks recovery for the latter services at market rates, despite the fact that, as subsequent filings ordered by this court reveal, its actual costs for these services were lower.[1] Defendant neither questions the reasonableness of the hours expended by WMATA's in-house counsel nor plaintiff's right to be reimbursed for those hours. But, it vigorously challenges the hourly rate charged for plaintiff's in-house

---

1. This court ordinarily employs the lodestar method for determining appropriate compensation, determining first the reasonable hours expended and then multiplying that figure by each attorney's reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Applegate v. United States,* 52 Fed.Cl. 751, 764 (2002). Plaintiff has the "burden of demonstrating that the amount sought for attorneys' fees and costs meets statutory requirements." *Preseault v. United States,* 52 Fed.Cl. 667, 670 (2002) (citing *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933).

counsel and, correspondingly, the amount ultimately owed WMATA. For the reasons that follow, the court agrees that plaintiff is entitled to fees for its in-house counsel, but not at the rate which plaintiff claims.

■ We begin, of course, with the language of the attorney's fee provision in question.[2] As noted, the URA permits the court to "reimburse" a plaintiff for reasonable attorney's fees and costs that were "actually incurred" because of the compensation proceeding. 42 U.S.C. § 4654(c). Various lexicons define the word "reimburse" alternatively as meaning "[t]o repay (money spent); refund" or "to pay back or compensate (another party) for money spent or losses incurred." American Heritage Dictionary of the English Language 1471 (4th ed.2000); see also Merriam–Webster's Collegiate Dictionary 986 (10th ed.1998). Similar sources define "actually" as meaning "[i]n fact; in reality," American Heritage Dictionary at 18, and "incurred" as "[t]o become liable or subject to as a result of one's actions," id. at 889.[3] As a matter of abstract linguistics, combining these terms leaves little doubt that Congress intended plaintiffs to recover under the URA only attorney costs (as well as appraisal and engineering expenses) they were actually obliged to pay. Nothing in the statute's limited legislative history suggests otherwise.[4] As such, costs, including attor-

ney's fees, are recoverable under section 4654(c) not because they are abstractly "reasonable," nor, relatedly, because they might somehow be "deemed" or "constructively" incurred; nor even because they represent an amount appropriate as punishment for, or deterrence against, some conduct. Rather, such costs, to be eligible for reimbursement, must be "actually" incurred because of the litigation. Short of awkwardly stacking adverbs (e.g., "*really,* actually incurred"), this court can scarcely imagine how Congress could have made its intent in this regard any more plain.

■ Properly construed, the cited language readily leads to the conclusion that WMATA is entitled to recover costs associated with its in-house counsel. Thus, defendant concedes, as it must, that plaintiff was, in fact, i.e., "actually," made subject to, i.e., "incurred," reasonable costs for attorney services because of this proceeding, and is entitled to be paid back the money spent for those services, i.e., to be "reimbursed" those expenses. That the trial of this matter was conducted by in-house counsel, whose salary and benefits were essentially fixed, does not alter this reality. Per contra. There is no hint, either in the statute or its legislative history, that Congress intended the United States to escape liability for attorney's fees

---

2. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In analyzing this language, the court is guided by a "fundamental canon of statutory construction," to wit, that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).

3. See also 1 Oxford English Dictionary 132 (2d ed.1989) (defining "actually" as "[i]n act or fact; as opposed to possibly, potentially, theoretically, ideally"); Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1375 (Fed.Cir.2002) (defining "to incur" within the context of a fee statute as "[t]o become liable or subject to"). Both of these definitions are cited in Preseault, 52 Fed.Cl. at 674–75.

4. The Ninth Circuit has noted that "[t]hough sparse and generally unilluminating, the legisla-

tive history supports a narrow reading of the statute." United States v. 4.18 Acres of Land, 542 F.2d 786, 788 (9th Cir.1976). In support of this statement, the Ninth Circuit cited the accompanying House Report, which after paraphrasing this section of the URA, states: "[o]rdinarily the Government should not be required to pay expenses incurred by property owners in connection with condemnation proceedings. The invitation to increased litigation is evident." H.R.Rep. No. 91–1656, at 25 (1970), U.S.Code Cong. & Admin.News 1970, at 5850, 5875. Based on this report and other snippets of the statute's legislative history, the Ninth Circuit observed that "[i]t seems fair to conclude that Congress intended ... to create a narrow exception to the general rule of nonrecovery of litigation expenses." 4.18 Acres, 542 F.2d at 789; see also United States v. 410.69 Acres of Land, 608 F.2d 1073, 1076 (5th Cir.1979) (discussing the comparable provision of section 4654(a)); United States v. 243.538 Acres of Land, 509 F.Supp. 981, 985 (D.Haw.1981) (same). At the least, this legislative history suggests that the presence of the word "actually" was not incidental.

simply because an institutional plaintiff decides that it is better served by its own in-house counsel. Indeed, while research reveals no case that has construed the URA or a similarly-worded fee statute to apply to in-house counsel, cases are legion in which courts, including the Federal Circuit, have held that costs associated with in-house counsel who actively tried a case were "reasonable" and "incurred" within the meaning of sundry federal attorney-fee provisions. *See, e.g., PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc.,* 840 F.2d 1565, 1570 (Fed.Cir.1988) (awarding attorney's fees for in-house counsel under 35 U.S.C. § 285).[5] That the URA, unlike these other provisions, requires that legal expenses be "actually" incurred does not compel a different result on the facts encountered here.

█ Though defendant agrees that WMATA is entitled to recover costs on account of its in-house counsel, it contends that the transit authority should be reimbursed not at market rates for private attorneys in the Washington, D.C. metropolitan area, but rather based upon its own "costs, disbursements or expenses." To hold otherwise, defendant contends, would be to confer upon plaintiff a windfall. Not so, asseverates WMATA, claiming that it is entitled to a "reasonable" attorney's fee under the URA, whether or not it paid its in-house counsel

less. In so arguing, plaintiff relies heavily on *Raney v. Federal Bureau of Prisons,* 222 F.3d 927 (Fed.Cir.2000).

*Raney* involved the assessment of attorney's fees following a union staff counsel's successful representation of a federal employee in a grievance. The relevant statute, the Back Pay Act, provides that a prevailing employee in such an action "is entitled ... to receive" "reasonable attorney's fees related to the personnel action which ... shall be awarded in accordance with the standards established under § 7701(g) of this title." 5 U.S.C. § 5596(b)(1)(A)(ii). Section 7701(g), in turn, requires, *inter alia,* that the fees awarded be "incurred" by the employee. The arbitrator in *Raney* held that the employee was entitled to such fees. But, instead of using the prevailing market rate to calculate those fees, he determined that, because Raney was represented by union staff attorneys, the award should be based only on the actual cost of providing the legal services. The Federal Circuit, sitting *en banc,* reversed, holding that the Back Pay Act "provides no basis for distinguishing between in-house and private firm counsel when calculating or assessing such fees." 222 F.3d at 932. Judge Gajarsa, writing on behalf of the majority, noted that Congress had used the phrase "reasonable attorney fees" in numerous fee statutes, that the Supreme Court had

---

5. *See also Central States, Southeast & Southwest Areas Pension Fund v. Central Cartage Co.,* 76 F.3d 114, 115–16 (7th Cir.1996) (permitting attorney's fees under ERISA (29 U.S.C. § 1132(g)(2)) to staff attorneys of nonlegal organization); *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 762 F.2d 272, 278 (3d Cir.1985), *aff'd, in part, rev'd, in part, on other grounds,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (permitting award of attorney's fees under the Clean Air Act (42 U.S.C. § 7604(d)) to nonlegal entity represented by in-house counsel); *Textor v. Bd. of Regents,* 711 F.2d 1387, 1396–97 (7th Cir.1983) (permitting, under Fed.R.Civ.P. 37(a)(4), attorney's fees for salaried in-house counsel of universities); *Nat'l Treas. Employees Union v. United States Dep't of Treas.,* 656 F.2d 848, 853 (D.C.Cir.1981) (permitting award under Privacy Act (5 U.S.C. § 552a(g)(3)(B)) of attorney's fees to lay organization utilizing in-house counsel); *Holmes v. NBC/GE,* 168 F.R.D. 481, 482 n. 3 (S.D.N.Y. 1996), *aff'd,* 133 F.3d 907, 1997 WL 829305 (2d Cir.1997) (table) (permitting award, under Fed. R. Civ.P. 16(f), of attorney's fees for nonlegal

entity's in-house counsel); *Brisbane v. Port Auth.,* 550 F.Supp. 222 (S.D.N.Y.1982) (permitting attorney's fees, under 42 U.S.C. § 2000e5(k), to port authority for work by in-house counsel); *Consumers Union of United States, Inc. v. Bd. of Governors of Fed. Reserve Sys.,* 410 F.Supp. 63, 65 (D.D.C.1975) (granting attorney's fees, under the Freedom of Information Act (5 U.S.C. § 552(a)(4)(E)), to non-profit consumer educational organization when litigation was conducted by in-house salaried attorneys); *compare Federal Deposit Ins. Corp. v. Bender,* 182 F.3d 1, 5 (D.C.Cir.1999) (no recovery where in-house counsel acted only as a liaison between the client and outside counsel).

As defendant is undoubtedly aware, similar cases hold that the Justice Department is entitled to receive attorney's fees on account of work performed by its own salaried attorneys. *See, e.g., United States v. Myers,* 363 F.2d 615, 621 (5th Cir.1966); *Bailey v. United States,* 260 F.Supp. 48, 54 (E.D.Va.1966); *United States v. State Farm Mutual Automobile Insurance Co.,* 245 F.Supp. 58, 59 (D.Or.1965).

repeatedly construed such statutes as authorizing market-based, rather than cost-based, awards, and that the court of nine, indeed, had specifically so held in at least one case involving a non-profit legal organization. 222 F.3d at 932–33 (citing, *e.g., Blum v. Stenson,* 465 U.S. 886, 894–96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). "[L]ike the legal service organization in *Blum,*" the Federal Circuit concluded, the union "lies among those organizations contemplated by Congress to be entitled to reasonable attorney fees." 222 F.3d at 933.

But had such fees been "incurred" by the employee? On this point, the majority noted that, in emphasizing this requirement, the dissent had construed section 7701(g) as requiring that the fees be "actually" incurred. Characterizing this approach as a bit of unwarranted *joie de revision,* the Federal Circuit observed—

> The dissent's attempt to restrict "reasonable attorney fees incurred" to "reasonable attorney fees *actually* incurred" constitutes precisely the type of legislative rewrite that any court should avoid. It imposes a limitation which Congress neither expressed nor intended. Congress has passed a variety of statutes that have specifically referred to attorney fees as "incurred," ... but the courts have neither interpreted the "incurred" term in these statutes to restrict or limit the payment of fees to those *actually* incurred, nor prevented market-rate fees from being awarded.

*Id.* at 934 (citations omitted; emphasis in original). The court further noted that the legislative history of the Back Pay Act revealed that the provision was intended to "deter the unreasonable exercise of governmental authority," and criticized the dissent's attempt to imply that fees must be "actually" incurred as "subvert[ing] this very purpose." *Id.* at 935. Based upon this *ratio dicidendi,* the Federal Circuit ultimately concluded, "[c]learly then, the fees 'incurred' in this case

may also be 'reasonable' according to the prevailing rates of the market." *Id.* at 934.

Of course, the critical word missing from the statute in *Raney* is conspicuously present in the provision here. Far from supporting WMATA's position, *Raney* emphasizes that the addition of that word—"actually"—can be significant.[6] Unlike in the Back Pay Act, that word need not be implied in the URA—rather it is an express limitation that Congress plainly intended, likely because the legislative purpose of the URA, unlike the Back Pay Act, is not to deter, but rather to reimburse. In short, by expressly tying the words "reasonable attorney fees" to the qualifying phrase "actually incurred," the URA envisions a fee-shifting mechanism different from those analyzed in *Raney* and the Supreme Court cases upon which the Federal Circuit relied. As such, under the standards of section 4654(c), which controls this case, plaintiff cannot receive an award based on market rates, but instead is restricted to a reimbursement of the costs "actually incurred" as the result of the service of its in-house counsel.

Indications that this understanding is firmly rooted in the text of section 4654(c) may be found in several decisions that have construed statutes requiring legal costs to be "actually incurred." Such was the holding, for example, in *United States v. 122.00 Acres of Land,* 856 F.2d 56 (8th Cir.1988). In that case, the plaintiff-condemnee had entered into a contingent fee contract with his attorney that provided for recovery only if the condemnee received payment for his land. Unable to pay the requisite compensation, the government abandoned its condemnation action and thus made no condemnation payment. Plaintiff, nonetheless, sought recovery of attorney's fees under the URA. The Eighth Circuit, however, held that plaintiff was not entitled to such an award. It noted that a condition precedent to the plaintiff's liability was the actual recovery of payment for his land and that no such recovery was obtained because the proceedings were abandoned. As such, the court concluded that

---

6. *Raney* plainly precludes this court from relying on various decisions that have read fee statutes specifying that recoverable fees must be "incurred" as requiring that those fees be "actually"

incurred. *See, e.g., Marre v. United States,* 38 F.3d 823 (5th Cir.1994) (construing 26 U.S.C. § 7430).

there was " 'no 'incurred' obligation because the contingency did not occur.' " *Id.* at 58 (quoting *United States v. 431.60 Acres of Land,* 355 F.Supp. 1093, 1096 (S.D.Ga.1973)). The court held that "[t]he failure to fulfill this contingency" was "fatal" to the plaintiff's claim for attorney's fees. 856 F.2d at 58. The court thus gave the language of the statute its ordinary meaning in refusing to allow for the recovery of fees for which there was no actual outlay. *See also Wisconsin v. Hotline Indus., Inc.,* 236 F.3d 363 (7th Cir. 2000) (government limited to recouping salary and overhead costs of attorneys under 28 U.S.C. § 1447(c), which permits recovery of "actual expenses, including attorney fees, incurred as a result of the removal").

As plaintiff notes, several decisions in this court hold otherwise. Prominent among these is *Shelden v. United States,* 41 Fed.Cl. 347 (1998), in which this court (Smith, C.J.) held that section 4654(c) did not limit an attorney's fee award to a contingency fee percentage, rejecting the theory that such percentage constituted the only fees "actually incurred" by the plaintiff. The court instead awarded "reasonable" fees based upon market rates, even though the plaintiff was not obliged to pay those rates. In fleshing out its rationale, the court expressly disagreed with the Eighth Circuit's decision in *122 Acres, supra,* finding that "[t]he Supreme

Court has addressed the issue in *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), in the context of another statute, 42 U.S.C. § 1988." 41 Fed.Cl. at 350. However, the court failed to account adequately for the fact that neither the statute analyzed in *Blanchard,* nor that considered in another Eighth Circuit decision cited by the court, *Bess v. Bess,* 929 F.2d 1332 (8th Cir.1991), required that recoverable fees be "actually incurred." Instead, those statutes provided, respectively, only that the fees be "reasonable" or "reasonably incurred" and did not refer, as here, to an award as being a reimbursement.[7] As such, while the court in *Shelden* was "convinced that the plaintiffs in this case are not limited to the amount they were obligated to pay in the contingency fee agreement," 41 Fed.Cl. at 351, this court, respectfully, is equally convinced that the construction of the URA evidenced in *Shelden* is irreconcilable with the limiting language of the statute, particularly as compared to other statutes lacking the "actually incurred" requirement, and especially in light of *Raney* and other persuasive authorities.[8]

So, if not calibrated to market rates, how should the amount of recovery be determined here? Oddly, two partially abrogated Federal Circuit cases supply an answer. In *Goodrich v. Dept. of the Navy,* 733 F.2d 1578, 1581 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1189,

7. The statute considered in *Blanchard,* 42 U.S.C. § 1988, a well-known civil rights statute, provides that a court, in various circumstances, "may allow the prevailing party, ... a reasonable attorney's fee." In *Bess,* the statute involved, 18 U.S.C. § 2520(b)(3), provides that "appropriate relief" in cases involving the prohibited uses of electronic communications includes "a reasonable attorney's fee and other litigation costs reasonably incurred."

8. More recently, in *Preseault v. United States,* 52 Fed.Cl. 667 (2002), this court held that attorney's fees were "actually incurred" within the meaning of the URA, and could be awarded under that statute, where plaintiffs were represented by a non-profit legal services organization, nominally on a *pro bono* basis, but with an express understanding that the organization would receive any fees or costs recovered in the action. In so holding, this court held that the "addition of the word 'actually' does not affect any material change" in the meaning of the URA. *Id.* at 675. While this observation is true in most factual settings, *see Applegate,* 52 Fed.Cl. at 759, it is not

true in the case *sub judice,* for the reasons stated above. Indeed, the court in *Preseault* seemed to recognize that the use of this word "actually" precluded an award from being based on a "constructive" obligation to pay fees over to an attorney. *Preseault,* 52 Fed.Cl. at 675. And while hesitating to read *Raney* as providing a "definitive" construction of the URA—a hesitancy clearly warranted as that case did not involve that statute—the *Preseault* court, nonetheless, observed that "[a]ny insight that *Raney* offers in the construction of the URA is therefore to suggest that the effect of the word 'actually' may operate to limit fees to the actual cost of the legal services rendered, as opposed to utilizing prevailing market rates." *Id.* at 676. Moreover, in concluding that an award based upon market rates would not afford the plaintiffs a windfall, the court noted that, per agreement, the plaintiffs were obliged to turn over to their attorneys any fees recovered in the litigation. *Id.* at 677. Such is not the case here, at least as to the portion of the fees relating to WMATA's in-house counsel. Accordingly, this court does not believe that *Preseault* warrants a different result.

105 S.Ct. 958, 83 L.Ed.2d 965 (1985), the Federal Circuit held that cost was best estimated by considering the direct costs associated with the legal services rendered, plus an allowance for overhead. The Federal Circuit employed a similar rule in *Devine v. National Treasury Employees Union*, 805 F.2d 384, 389 (Fed.Cir.1986), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). While the application of this *regula* to fee statutes that do *not* calibrate an award in terms of fees or costs "actually incurred" has expressly been abrogated by *Raney*, that *en banc* decision does not suggest—and certainly did not rule—that the measure employed in *Goodrich* and *Devine* would be inappropriate where, as here, a statute *is* so calibrated. *See also Wisconsin*, 236 F.3d at 367–68; *Johnson v. Orr*, 739 F.Supp. 945, 948 (D.N.J. 1988). Indeed, limiting the recovery of WMATA to the salary and benefits of its in-house counsel, plus some allowance for overhead, is a logical measure of WMATA's costs, which indisputably do not include certain components that enter into the calculation of market rates (*e.g.*, a profit margin or the risk of client nonpayment).

At the court's request, plaintiff has provided figures which indicate that the salary and benefits of its counsel increased from $57.08 to $68.56 per hour during the period in question. To these figures, the court adds $10.48 per hour, as an approximate measure of WMATA's overhead expenses.[9] Multiplying the resulting hourly rates by the hours worked by plaintiff's counsel during various periods yields a total lodestar of $18,654.04. The court determines that, under section 4654(c), this amount is recoverable by WMATA as an attorney's fee "actually incurred" because of this proceeding.

Based on the foregoing, as well as prior agreements reached by the parties, the court determines:

1. Plaintiff is entitled to prejudgment interest of $286,683.47.

2. Plaintiff is entitled to appraisal and transcript costs of $22,465.10.

3. Plaintiff is entitled to attorney's fees totaling $125,869.04, including $107,215.00 for outside counsel and $18,654.04, as provided herein.

Accordingly, the Clerk shall enter a judgment in the amount of $286,683.47 for prejudgment interest and tax costs of $148,334.14.

**IT IS SO ORDERED.**

---

9. Plaintiff indicates that the general annual overhead for his office is $313,159 for 30 attorneys, which averages to $10,438.63 per attorney per year. Plaintiff also indicates that its in-house counsel shared a secretary who made $50,000 per year during the period in question with 4 other attorneys, which averages to $10,000 per attorney per year. The court determined the figure above by summing these two averages, which yielded a total of $20,438.63, and then dividing that total by 52 weeks and 37.5 hours per week, producing the figure of $10.48 of overhead for each hour worked by plaintiff's in-house counsel.